UNITED STATES DISTRICT COURT
NORTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>WALMART INC.,<br><br>    Defendant. | Case No. 22-cv-4177 |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. PLAINTIFF'S ALLEGATIONS ..................................................................................... 2
III. ARGUMENT ................................................................................................................... 3
      A. Plaintiff's Illinois Consumer Fraud Claims Cannot Stand Because Walmart Did Not Deceive Him nor Intend that He Rely on an Alleged Deception. ............. 3
      B. Plaintiff Cannot Pursue Claims Under the Consumer Protection Laws of Other States. ................................................................................................................ 6
      C. Plaintiff's Unjust Enrichment Claim Should be Dismissed. ................................... 7
      D. Plaintiff Lacks Article III Standing. ........................................................................ 8
          1. Plaintiff fails to establish an injury in fact for his nationwide or multi-state claims. ............................................................................................................ 9
          2. Plaintiff does not have Article III standing to pursue claims about products he did not purchase. ................................................................................. 10
          3. Plaintiff lacks standing to pursue injunctive relief. ................................. 11
IV. CONCLUSION .............................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Actiq Sales & Mktg. Practices Litig.*,
 307 F.R.D. 150 (E.D. Pa. 2015) ..................................................................................................8

*Arreola v. Godinez*,
 546 F.3d 788 (7th Cir. 2008) ......................................................................................................9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................................3

*Avery v. State Farm Mut. Auto Ins. Co.*,
 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801 (2005) ..........................................................6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................................................................3

*Benson v. Fannie May Confections Brands, Inc.*,
 2018 WL 1087639 (N.D. Ill. 2018) ..........................................................................................11

*BMW of North Am., Inc.*, 517 U.S. 559, 570 (1996) ...................................................................6, 7

*Borsellino v. Goldman Sachs Grp., Inc.*,
 477 F.3d 502 (7th Cir. 2007) ......................................................................................................3

*In re Bridgestone/Firestone, Inc.*,
 288 F.3d (7th Cir. 2002) .............................................................................................................7

*Brooks v. Ross*,
 578 F.3d 574 (7th Cir. 2009) ......................................................................................................3

*Camasta v. JOS A. Bank Clothiers, Inc.*
 761 F.3d 732 (7th Cir. 2014) ....................................................................................................11

*Carpenter v. PetSmart, Inc.*,
 441 F. Supp. 3d 1028, 1040 n.4, 1041 (S.D. Cal. 2020) ............................................................9

*Casillas v. Madison Ave. Assocs., Inc.*,
 926 F.3d 329 (7th Cir. 2019) ......................................................................................................9

*CHS Acquisition Corp. v. Watson Coatings, Inc.*,
 No. 17-CV-4993, 2018 WL 3970137 (N.D. Ill. Aug. 20, 2018) ...............................................4

*Cleary v. Philip Morris Inc.*,
 656 F.3d 511 (7th Cir. 2011) ......................................................................................................7

*Cocroft v. HSBC Bank USA, N.A.*,
    796 F.3d 680 (7th Cir. 2015) ...................................................................................................4

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482, 675 N.E.2d 584 (1996) ...................................................................................3

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    2013 WL 4506000 (N.D. Ill. 2013) ........................................................................................10

*Demick v. City of Joliet*,
    108 F. Supp. 2d 1022 (N.D. Ill. 2000) ......................................................................................4

*Driebel v. City of Milwaukee*,
    298 F.3d 622 (7th Cir. 2002) ....................................................................................................5

*Freeman v. MAM USA Corp.*,
    528 F. Supp. 3d 849 (N.D. Ill. 2021) ......................................................................................11

*Harvey v. Resurrection Univ.*,
    No. 21-CV-3203, 2022 WL 3716213 (N.D. Ill. Aug. 29, 2022) ...............................................4

*Henson v. CSC Credit Serv.*,
    29 F.3d 280 (7th Cir.1994) .......................................................................................................4

*Horist v. Sudler & Co.*,
    941 F.3d 274 (7th Cir. 2019) ....................................................................................................7

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ....................................................................................................1

*Kahn v. Target Corp.*,
    Case No. 1:22-cv-4178 (N.D. Ill. Aug. 9, 2022) ......................................................................1

*Knapp v. Zoetis Inc.*,
    2021 WL 1225970 (E.D. Va. 2021) .........................................................................................9

*Mednick v. Precor, Inc.*,
    320 F.R.D. 140 (N.D. Ill. 2017) ...............................................................................................7

*Muir v. NBTY, Inc.*,
    No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. 2016) ..............................................................11

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ...................................................................................9

*Payton v. Cnty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ..................................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*,
   631 F.3d 436 (7th Cir. 2011) ...................................................................................................3

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
   2012 WL 39766 (N.D. Ill. 2012) ...........................................................................................10

*Porter v. NBTY, Inc.*,
   No. 15 CV 11459, 2016 WL 6948379 ..................................................................................11

*Robinson v. Walgreen Co.*,
   2022 WL 204360 (N.D. Ill. 2022) ...........................................................................................7

*Sandee's Catering v. Agri Stats, Inc.*,
   No. 20 C 2295, 2020 WL 6273477 (N.D Ill. 2020)..............................................................7, 8

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
   Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ..........................8

*Smith-Brown v. Ulta Beauty, Inc.*,
   2019 WL 932022 (N.D. Ill. 2019) .......................................................................................9, 10

*Spokeo Inc. v. Robins*,
   578 U.S. 330 (2016)......................................................................................................8, 9, 11

*Tierney v. Advocate Health & Hosp. Corp.*,
   797 F.3d 449 (7th Cir. 2015) ...................................................................................................3

*Toulon v. Cont'l Cas. Co.*,
   No. 15 CV 138, 2016 WL 561909 (N.D. Ill. Feb. 12, 2016)...................................................3

*Tudor v. Jewel Food Stores*,
   288 Ill.App.3d 207, 681 N.E.2d 6 (1997) ...............................................................................5

*Tylka v. Gerber Products Co.*,
   178 F.R.D. 493 (N.D. Ill. 1998)...............................................................................................7

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*,
   390 F. Supp. 3d 892 (N.D. Ill. 2019) .......................................................................................6

*Ulrich v. Probalance, Inc.*,
   No. 16 C 10488, 2017 WL 3581183 (N.D. Ill. 2017)............................................................11

*In re Wellbutrin XL*,
   260 F.R.D.............................................................................................................................9, 10

**Statutes**

ICFA ...........................................................................................................................3, 5, 6, 11

IDTPA ............................................................................................................................................6

Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1 *et seq*. ...........................................................................................................................................3

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*. ......................................4

NY Pricing Laws and Regulations, §197-B(3)(b) ...........................................................................4

UCC .................................................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 8 ..............................................................................................................................7

Fed. R. Civ. P. 9(b) .........................................................................................................................3

Fed. R. Civ. P. 12(b)(1) ................................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................3

I.  **INTRODUCTION**

Plaintiff Yoram Kahn, an Ohio resident, alleges that he was defrauded when he was charged a total of $1.89 more for certain items at a Walmart checkout counter in Niles, Illinois than the prices reflected on the store shelf ("Shelf Pricing"). Plaintiff received a receipt at the time of purchase reflecting the alleged price discrepancy but, instead of complaining to the cashier or seeking a refund, he returned to the shelf to photograph the receipt alongside the alleged current Shelf Pricing. Within a week, Plaintiff filed this putative national class action complaint seeking at least five million dollars in damages ("Complaint") based on this $1.89 discrepancy as well as purchases made by his counsel as part of a supposed "investigation" at stores in and outside the state. On the same day Plaintiff claims to have been defrauded at a Walmart store in Niles, Plaintiff also claims (in a separate, virtually identical lawsuit filed by the same counsel) that he was similarly defrauded at a Target store down the block.[1]

Plaintiff's attempt to extract millions of dollars from Walmart cannot stand because the company has not engaged in any deceptive act, nor did it intend for Plaintiff to rely on any incorrectly stickered price. Instead, the factual allegations in the Complaint merely reflect the real-world reality that it is virtually impossible for a retailer to match Shelf Pricing and scanned pricing 100% of the time for all items. Perfection in this regard is not plausible nor is it reasonably expected under the law. Plaintiff alleges nothing that would create the necessary facts to create an inference that these overcharges were anything other than mere mistakes. Moreover, Plaintiff cannot establish that he was damaged by purchases his attorney allegedly made.

---

[1] *See Kahn v. Target Corporation*, Case No. 1:22-cv-4178 (N.D. Ill. Aug. 9, 2022). A copy of the complaint from the *Target* case is attached as Exhibit A. A court may take judicial notice of matters of public record, such as materials from another proceeding. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 942 (7th Cir. 2012).

The Complaint also should be dismissed in part because Plaintiff lacks Article III standing to pursue many of his asserted claims. Specifically, he does not have standing to assert a national or multi-state class, or to pursue claims regarding products he did not purchase. Plaintiff also does not have standing to seek injunctive relief where he does not allege that he will suffer future harm.

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff traveled from his home state of Ohio and went shopping at a Walmart store in Niles, Illinois on August 2, 2022. (Compl. ¶ 13.) There, he purchased 15 items, spending a total of $27.69 plus tax. (*Id.* ¶ 24.) Plaintiff alleges that he read and relied on the Shelf Pricing before making his purchases, but that the prices charged at the check-out counter were such that some of those items cost more than the amount displayed on the Shelf Pricing. (*Id.* ¶¶ 24–26.) The total alleged price differential for all the items Plaintiff purchased was $1.89. (*Id.*)

Plaintiff received a written receipt from the Walmart cashier that reflected the amount charged for each of the purchased items. (*Id.*) He included in his Complaint photographs of the receipt taken alongside the alleged Sticker Price at the time of purchase for the items in question. (*Id.* ¶ 24.) Plaintiff does not allege that he raised any questions or complaints with the cashier about the amounts charged, nor does Plaintiff allege that he was precluded from returning the items for a full refund under Walmart's return policy once he learned he was charged more than the Shelf Pricing. Instead, Plaintiff alleges that once he learned of the price discrepancies, he went back and took pictures which he then used to file a lawsuit. (*Id.*)

With respect to his non-Illinois claims, Plaintiff relies on a purported "investigation" by his counsel, who allegedly purchased products at other Walmart stores that purportedly had discrepancies between the Shelf Pricing and the amount charged at check-out. (*See id.* ¶¶ 38–48.) Plaintiff's counsel is not identified as a party to this action, nor has Plaintiff identified any other individual who was allegedly injured by the purported pricing differences.

2

**III.     ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 12(b)(6). While well-pleaded facts are taken as true for purposes of a motion to dismiss, factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "allegations in the form of legal conclusions are insufficient" to state a claim for relief that is plausible on its face. *Tierney v. Advocate Health & Hosp. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015). A complaint that "merely parrot[s] the statutory language of the claims . . . rather than providing some specific facts to ground those legal claims" must be dismissed. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

For fraud-based claims, Plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. Rule 9(b) applies to "averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). A claim alleging fraud under the ICFA "must be pled with the same particularity and specificity as that required under common law fraud." *Toulon v. Cont'l Cas. Co.*, No. 15 CV 138, 2016 WL 561909, at *5 (N.D. Ill. Feb. 12, 2016) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996)); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreens Co.*, 631 F.3d 436, 441 (7th Cir. 2011).

    **A.     Plaintiff's Illinois Consumer Fraud Claims Cannot Stand Because Walmart Did Not Deceive Him nor Intend that He Rely on an Alleged Deception.**

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1 *et seq.*, a plaintiff must allege sufficient facts to show that: "(1) the

3

defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *CHS Acquisition Corp. v. Watson Coatings, Inc.*, No. 17-CV-4993, 2018 WL 3970137, at *12 (N.D. Ill. Aug. 20, 2018) (quoting *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015)). Similarly, to plead a viable claim under the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 510/2, *et seq.*, a plaintiff must allege sufficient facts to establish that the defendant engaged in an unfair or deceptive act with the intent that others rely on the concealment, suppression, or omission of a material fact.

Plaintiff must allege more than the mere fact of a price discrepancy to state a claim. A price discrepancy, standing alone, evidences no more than a mere error. It is not evidence that a defendant intended to deceive anyone.

If Plaintiff could state a claim based simply on identifying a price discrepancy, the standard would change from an intentional action to strict liability. But Plaintiff identifies no state that requires perfection in this area. To the contrary, recognizing that Shelf Pricing cannot ever be 100% matched with scanned pricing, state regulations allow for pricing discrepancies to occur. For example, a retailer generally is considered in compliance with New York law if 98% of the items are accurately priced.[2] *See* NY Pricing Laws and Regulations, §197-B(3)(b). Similarly, the Law & Regulations Committee of the National Conference of Weights and Measures ("NCWM") has proposed uniform model regulations for voluntary adoption by the states. The current recommendation allows for 2% of items in a retail store to have price discrepancies.[3]

---

[2] Defense counsel has not identified any directly applicable Illinois law or regulation.

[3] *See* Handbook 130, Section V, Examination Procedure for Price Verification, a copy of which is attached as Ex. B. The Court can take judicial notice of publicly available documents. *Harvey v. Resurrection Univ.*, No. 21-CV-3203, 2022 WL 3716213, at *4 (N.D. Ill. Aug. 29, 2022) (taking judicial notice of the Department of Education's Federal Student Aid Handbook as publicly available information); *see also Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that a court may take judicial notice of matters of public record); *Demick v. City of Joliet*, 108 F.

Illinois is no different. The Illinois Appellate Court has previously rejected the Plaintiff's theory, holding that the mere fact of a price differential between shelf and register is insufficient to state a claim under the ICFA. In *Tudor v. Jewel Food Stores,* 288 Ill.App.3d 207, 681 N.E.2d 6 (1997), the plaintiff[4] alleged that the defendant improperly charged her for several grocery items because the prices scanned at the checkout counter differed from the advertised shelf prices for the purchased items. *Id.* at 209–210. In granting the defendant's motion to dismiss, the court noted that it is virtually impossible for a retailer to have 100% accurate Shelf Pricing–some error is inevitable. *Id.* at 210–211. The appellate court affirmed the trial court's order dismissing the plaintiff's complaint, finding that the defendant had not engaged in a deceptive act or practice just because the prices charged for a few items did not match the shelf pricing. *Id.* The court emphasized that the "defendant issues a receipt, enabling her to check whether she has been correctly charged," as establishing there was no intent to deceive. *Id.* at 210.

The facts here are much like those in in *Tudor*, and the result should be the same. Like Tudor, Plaintiff only identifies a few items that allegedly had a discrepancy between the Shelf Pricing and the price charged. Moreover, like Tudor, Plaintiff received a receipt that clearly and accurately reflected the price charged. Given these undisputed facts, as in *Tudor*, Plaintiff has failed to sufficiently allege facts that create a reasonable inference of anything other than an error. Thus, Plaintiff alleges nothing from which this Court can reasonably infer that Walmart engaged in a deceptive act, much less that Walmart *intended* to defraud consumers. For these reasons alone, the consumer fraud claims should be dismissed.

---

Supp. 2d 1022, 1025 (N.D. Ill. 2000) (taking judicial notice of local ordinances and City's Rules and Regulations as matters of public record in deciding motion to dismiss); *Driebel v. City of Milwaukee*, 298 F.3d 622, 630 n.2 (7th Cir. 2002) (taking judicial notice of sections of the Milwaukee Police Department Manual of Rules and Regulations on an appeal from an order granting summary judgment).

[4] The complaint alleged violation of the ICFA, unjust enrichment, and violation of the UCC.

### B. Plaintiff Cannot Pursue Claims Under the Consumer Protection Laws of Other States.

The ICFA "does not have extraterritorial effect" and, thus, applies only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801, 853–54 (2005). Similarly, a claim brought under the IDTPA must be based on a dispute that occurred primarily and substantially in Illinois. *See, e.g.*, *U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 909–11 & n.11 (N.D. Ill. 2019). Apparently recognizing this fact, Plaintiff seeks to extend the putative class beyond Illinois by asserting claims under the consumer fraud laws of other states based on purchases made by his attorney.[5] Plaintiff's attempt to do so, however, has several problems. First, to the extent Plaintiff might be correct that the other identified state laws are similar to the ICFA, claims under such laws would fail for the same reasons as explained above that doom his ICFA claim.

Second, Plaintiff fails to provide an exhaustive list of states that he contends have "similar" consumer laws. Instead, he identifies in a footnote certain state laws he *believes* fall into this category, without limiting his claims to those states. (*See* Compl. ¶¶ 51, 52 n.13, 14.) This non-inclusive listing of state laws is insufficient to state a claim.

Contrary to Plaintiff's assertion, state consumer fraud laws vary in significant ways, including the type of prohibited conduct, proof of injury-in-fact, available remedies, scienter, statute of limitations, and reliance. *See, e.g.*, *BMW of North Am., Inc.*, 517 U.S. 559, 570 (1996). The Seventh Circuit has acknowledged the significant variability among state laws and has expressly noted that "courts must respect these differences rather than apply one state's law to sales

---

[5] (*See* Compl. ¶¶ 51, 52 n.13, 14.) Notably, Plaintiff's proposed "multi-state" class does not include his home state of Ohio. (*See* Compl. ¶ 12.)

in other states with different rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1012. 1018 (7th Cir. 2002) (citing *BMW of North Am., Inc.* 517 U.S. 559). Several courts in this District have similarly acknowledged that state consumer fraud statutes often conflict, and often have subtle yet outcome-determinative nuances. *Tylka v. Gerber Products Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) ("a brief review of the applicable statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies."); *Mednick v. Precor, Inc.*, 320 F.R.D. 140, 153 (N.D. Ill. 2017) ("[w]hen the Court takes a peek beyond Illinois law, it turns out that the different states differ in what they allow an individual to recover under their consumer fraud statutes.").

Walmart is entitled to know exactly which laws are at issue so that it can respond accurately and completely to the elements for each claim under each state law. *Sandee's Catering v. Agri Stats, Inc.*, No. 20 C 2295, 2020 WL 6273477, at *12 (N.D Ill. 2020) (holding plaintiff did not meet its Rule 8 pleading requirements where plaintiffs failed to clearly state under which laws or which States plaintiff wished to bring its claims). Likewise, neither Walmart nor the Court should have to accept Plaintiff's unsubstantiated assertion that the requisite elements for each of the laws he identifies, let alone the state laws he does not identify, are the same as the elements required to state a claim under Illinois law. Lumping them together under the guise that the state laws are "similar" is insufficient. (*See* Compl. ¶¶ 51, 52 n.13, 14.) For this reason alone, Counts III and IV should be dismissed.

    **C.**    **Plaintiff's Unjust Enrichment Claim Should be Dismissed**

Unjust enrichment "is not a separate cause of action under Illinois law." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019). If an unjust enrichment claim rests on the same conduct alleged in another claim—as Plaintiff has done here—the "unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *Robinson*

*v. Walgreen Co.,* 2022 WL 204360, at *8 (N.D. Ill. 2022). Because Plaintiff's consumer fraud claims fail, so too must his unjust enrichment claim under Illinois law. *See id*.

Plaintiff's attempt to pursue an unjust enrichment claim on behalf of a national class (Count V) also cannot stand. Unjust enrichment laws vary around the country, and those differences are material and would be outcome determinative. *See In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 163–65 (E.D. Pa. 2015) (analyzing conflicts that exist among the unjust enrichment laws of the fifty states for nationwide class claims); *see also In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006) ("unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states."). For example, states vary on the level of misconduct a plaintiff must prove, whether unjust enrichment is an independent cause of action, whether a plaintiff must show an absence of adequate remedy at law, as well as other differences. *In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. at 166 n. 23, 24, 26.

Plaintiff does not identify, let alone address the different elements that must be pled to assert an unjust enrichment claim under all 50 states. Defendant should not be forced to respond to such ambiguous allegations. *Sandee's Catering,* 2020 WL 6273477, at *12.

### D. Plaintiff Lacks Article III Standing.

To survive a motion to dismiss under Rule 12(b)(1) for lack of standing, a plaintiff must present sufficient facts that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016); Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proof and must clearly allege facts establishing each

8

element. *Id*. The Seventh Circuit has directed that standing is "an antecedent legal issue" to be resolved before class certification. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).[6]

### 1. Plaintiff fails to establish an injury in fact for his nationwide or multi-state claims.

As the Supreme Court has made clear, to establish Article III standing, a plaintiff must allege an injury that is both "concrete and particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). To be "concrete," the injury "must be 'de facto'; that is, it must actually exist" and must be "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 339-40 (citations omitted).

Here, Plaintiff does not allege that he made purchases in other states, let alone that he personally encountered price discrepancies with any Walmart purchases outside Illinois.[7] Accordingly, Plaintiff has no alleged connection to any other states (other than potentially Ohio, which he does not list as part of his multi-state action) and Plaintiff suffered no injuries under the laws of other states.[8] *Knapp v. Zoetis Inc.*, 2021 WL 1225970, at *9 (E.D. Va. 2021) ("[F]ederal district courts . . . have found that a plaintiff lacks standing where their claims bear little or no causal relation to the law of the state he or she seeks to invoke."); *Carpenter v. PetSmart, Inc.*, 441

---

[6] *See also Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *5 (N.D. Ill. 2019). As the court explained in *Smith-Brown*, waiting until class certification is inappropriate where "there is plainly ample reason *at this juncture* to question whether [plaintiffs] will be able to pursue claims" under the laws of states "where [they] neither lived nor were injured." 2019 WL 932022, at *5 (citation omitted) (first bracket in original). As in *Smith-Brown*, here it would be "inappropriate to engage in wide-ranging discovery premised on a prospect as to which there is substantial doubt— namely, [plaintiff's] ability to assert causes of action created by other states for the benefit of other individuals injured in those other states." *Id.* at *6 (citation omitted) (bracket in original); *see also In re Wellbutrin XL*, 260 F.R.D. at 155 (concluding courts should not "allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery" before "proposing to represent the claims of parties whose injuries and modes of redress they would not share"); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) ("[W]here the putative plaintiffs' injury is in doubt, Article III standing issues should be resolved in the first instance.").

[7] Instead, Plaintiff merely alleges that his lawyers made purchases from Walmart stores in other states.

[8] And Plaintiff cannot circumvent this requirement by applying Illinois law to non-Illinois consumers. *See, supra* p.3 n. 4.

F. Supp. 3d 1028, 1040 n.4, 1041 (S.D. Cal. 2020) (concluding California resident injured in California had standing to assert claims under California law, but lacked standing under "other state's law[s]" irrespective of how similar those laws were to California law).

For these reasons, c ourts routinely grant motions to dismiss or strike class claims where named plaintiffs seek to represent proposed class members from other states. *E.g.*, *Smith-Brown*, 2019 WL 932022, at *5–6 (dismissing claims under laws of states with which plaintiffs had no connection); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *7 (N.D. Ill. 2013) (dismissing claims where plaintiffs did not meet "their burden of establishing injury in any of the other numerous states under whose laws they have brought challenges"); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 WL 39766, at *6 (N.D. Ill. 2012) (concluding where named plaintiff "claim[ed] not to seek relief 'on its own behalf' for the non-California state-law claims . . . it effectively concede[d] that it suffered no injury and has no claim as to [non-California] states"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("[A] plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law").

In summary, Plaintiff has no connection to any state other than Illinois (or possibly Ohio, though he alleges no injury in Ohio and brings no claims under Ohio law) and, thus, lacks standing to bring claims under the laws of any other state. P laintiff's lack of standing should be resolved now, and his non-Illinois claims should be dismissed.

### 2. Plaintiff does not have Article III standing to pursue claims about products he did not purchase

The United States Supreme Court and the Seventh Circuit repeatedly have held that "[s]tanding cannot be acquired through the back door of a class action." *Payton v. Cnty. of Kane*,

10

308 F.3d 673, 682 (7th Cir. 2002) (plaintiff cannot use the class-action device to "predicate standing on [an] injury which he d[id] not share."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016) (citation omitted). Given this well-established line of authority, courts within this District have consistently concluded that class-action plaintiffs cannot bring claims involving products they did not purchase. *See, e.g.*, *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *4, *9 (N.D. Ill. 2016); *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *3 (N.D. Ill. 2016.

Here, Plaintiff purchased items from a single Walmart store in Illinois. (Compl. ¶ 24.) Despite the limited nature of his purchases, Plaintiff nevertheless seeks to represent classes of individuals who purchased countless unidentified products at stores throughout the country. Consistent with the authority cited above, Plaintiff does not have Article III standing to do so.

### 3. Plaintiff lacks standing to pursue injunctive relief.

"To establish standing to seek injunctive relief, a plaintiff must allege a threat of future harm that is not conjectural or hypothetical." *Benson v. Fannie May Confections Brands, Inc.*, 2018 WL 1087639, at *5 (N.D. Ill. 2018); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. 2017). But Plaintiff has not alleged a threat of future harm, let alone any factual allegations to support a contention that he will be deceived going forward. *See Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 856–58 (N.D. Ill. 2021) (dismissing plaintiff's request for injunctive relief where there was no likelihood of future injury); *Ulrich*, 2017 WL 3581183, at *7 (a plaintiff who is aware of the alleged deceptive practice faces no threat of being revictimized); *see also Camasta v. JOS A. Bank Clothiers, Inc.* 761 F.3d 732, 741 (7th Cir. 2014) (holding, in dicta, that a consumer aware of a defendant's allegedly deceptive practices is unlikely to be harmed by them in the future). Plaintiff has not alleged that he will ever shop in a Walmart again (much less one in Illinois). Thus, even if Plaintiff adequately pleaded a violation of the ICFA—which he has not—Plaintiff lacks standing to seek injunctive relief.

11

IV.     CONCLUSION

For the reasons set forth above, Walmart respectfully requests that this Court dismiss Plaintiff's Class Action Complaint in its entirety.


Dated: October 6, 2022                          Respectfully submitted,

                                                /s/ Daniel M. Blouin
                                                Daniel M. Blouin
                                                Frank A. Battaglia
                                                Olga Pototskaya
                                                WINSTON & STRAWN LLP
                                                35 W. Wacker Drive
                                                Chicago, IL 60601
                                                312-558-5600
                                                312-558-5700 (fax)
                                                DBlouin@winston.com
                                                FBattaglia@winston.com
                                                OPototskaya@winston.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on the 6th day of October 2022, the foregoing Walmart, Inc.'s Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois, and was served by operation of that Court's electronic filing system on all parties of record.

Dated: October 6, 2022                                              Respectfully submitted,

*/s/ Daniel M. Blouin*
Daniel M. Blouin