**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YORAM KAHN, individually and on behalf of all other similarly situated, | |
| Plaintiffs, | |
| v. | Case No. 1:22-cv-04177 |
| WALMART, INC. | Judge: Honorable Sara L. Ellis |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT WALMART INC.'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

LEGAL STANDARD............................................................................................... 4

ARGUMENT ........................................................................................................... 5

I.      PLAINTIFF HAS ADEQUATELY PLED HIS ICFA CLAIMS...................................... 5

        A.      Plaintiff Sufficiently Alleges Walmart's Intentional Deceptive Conduct
                Under the ICFA............................................................................................ 5

        B.      Plaintiff Has Properly Pled Unfair Acts or Practices Under the ICFA................ 13

II.     PLAINTIFF HAS ADEQUATELY PLED MULTI-STATE CONSUMER
        CLASS CLAIMS ........................................................................................... 14

III.    PLAINTIFF HAS ADEQUATELY PLED A CLAIM FOR UNJUST ENRICHMENT. 16

IV.     PLAINTIFF HAS ARTICLE III STANDING TO BRING HIS CLAIMS..................... 17

        A.      Plaintiff has Standing to Pursue Claims on Behalf of Out-Of-State Purchasers .. 18

        B.      Plaintiff Can Represent Class Members Harmed By the Same Walmart Deceptive
                Practice as Plaintiff Experienced ....................................................... 21

        C.      Plaintiff Has Standing to Pursue Injunctive Relief.............................................. 22

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................. 4

*Azimpour v. Sears, Roebuck & Co.*,
   No. 15-CV-2798 JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017) ........................ 22

*Barrett v. Brian Bemis Auto World*,
   408 F. Supp. 2d 539 (N.D. Ill. 2005) ...................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................. 4

*Bell v. Publix Super Markets*,
   982 F.3d 468 (7th Cir. 2020) ................................................................................ 6

*Benson v. Fannie May Confections*,
   944 F.3d 639 (7th Cir. 2019) ................................................................. 6, 7, 13, 14

*Benson v. Fannie May Confections*,
   No. 17 C 3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018)................................... 23

*Benson v. Newell Brands, Inc.*,
   No. 19 C 6836, 2020 WL 1863296  (N.D. Ill. Apr. 14, 2020) ...................... 7, 17, 19

*Bober v. Glaxo Wellcome PLC*,
   246 F.3d 934 (7th Cir. 2001) ................................................................................ 6

*Bonahoom v. Staples, Inc.*,
   No. 20-CV-1942, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021)........................... 13, 14, 16, 18

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*,
   137 S. Ct. 1773 (2017)........................................................................................ 20

*Burton v. Hodgson Mill, Inc.*,
   Case No. 16-cv-1081-MJR-RJD, 2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ........................ 6

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ............................................................................. 24

*Camasta v. Omaha Steaks Int'l, Inc.*,
   No. 12-CV-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ...................... 7, 10, 12, 13

*Carpenter v. PetSmart, Inc.*,
   441 F. Supp. 3d 1028 (S.D. Cal. 2020) ................................................................. 20

*Carrol v. S.C. Johnsons & Son, Inc.*,
   No. 17-CV-05828, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) ............................. 17

*Chase v. Hobby Lobby Stores, Inc.*,
   No. 17-cv-00881-GPC-BLM, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ............................ 22

*Chester v. TJX Cos., Inc.*,
   No. 5:15-CV-01437-ODW-DTB, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) ................ 21

*Chow v. Aegis Mortg. Corp.*,
   286 F. Supp. 2d 956 (N.D. Ill. 2003) ....................................................................... 7

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ................................................................................ 17

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
   770 F.3d 586 (7th Cir. 2014) .................................................................................. 4

*Daniel v. Cook Cnty.*,
   833 F.3d 728 (7th Cir. 2016) .................................................................................. 7

*Early v. Bankers Life and Cas. Co.*,
   959 F.2d 75 (7th Cir. 1992) ................................................................................... 3

*Freeman v. MAM USA Corp.*,
   528 F. Supp. 3d 849 (N.D. Ill. 2021) ............................................................. passim

*Gibson v. City of Chi.*,
   910 F.2d 1510 (7th Cir. 1990) ............................................................................... 4

*Grabowski v. Dunkin' Brands, Inc.*,
   No. 17 C 5069, 2017 WL 6059966 (N.D. Ill. Dec. 7, 2017) ................................... 6

*Iddir v. I.N.S.*,
   301 F.3d 492 (7th Cir. 2002) ................................................................................. 5

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
   275 F. Supp. 3d 910 (N.D. Ill. 2017) .................................................................... 15

*In re Aftermarket Filters Antitrust Litig.*,
   No. 08 C 4888, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ................................. 19

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   No. 09 CV 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ............................ 20

iii

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011)..................................................................... 18

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    No. 09 C 7666, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) ......................................... 20

*In re Wellbutrin XL*,
    260 F.R.D. 143 (E.D. Pa. 2009)................................................................................ 19

*Jackson v. SFC Global Supply Chain, Inc*,
    No. 3:20-cv-01072-DWD, 2021 WL 37772696 (S.D. Ill. Aug. 25, 2021)............... 14

*Keating v. Nordstrom, Inc.*,
    No. 3:17-CV-00030-SLG, 2018 WL 6431879 (D. Alaska Oct. 19, 2018)............... 22

*Kinman v. Kroger Co.*,
    No. 21 C 1154, 2022 WL 1720589 (N.D. Ill. May 27, 2022) ................................. 18

*Knapp v. Zoetis Inc.*,
    No. 3:20CV191, 2021 WL 1225970 (E.D. Va. Mar. 31, 2021) ............................... 20

*Le v. Kohls Dep't Stores, Inc.*,
    160 F. Supp. 3d 1096 (E.D. Wis. 2016)............................................................. 23, 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................. 18

*McIntosh v. Walgreens Boots All., Inc.*,
    2019 IL 123626, 135 N.E.3d 73 (Ill. 2019) .............................................................. 8

*Mednick v. Precor, Inc.*,
    No. 14 C 3624, 2014 WL 6474915 (N.D. Ill. Nov. 13, 2014)................................. 22

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011) ................................................................................... 18

*Muir v. NBTY, Inc.*,
    No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016)................................. 21

*Muir v. Playtex Prods., LLC*,
    983 F. Supp. 2d 980 (N.D. Ill. 2013) ........................................................................ 5

*Mussat v. IQVIA, Inc.*,
    953 F.3d 441 (7th Cir. 2020) ................................................................................... 20

*Porter v. NBTY, Inc.*,
    No. 15 CV 11459, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016)............................ 21

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ............................................................ 4

*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013)................................................ 22

*Rawson v. Aldi*,
  No. 21-CV-2811, 2022 WL 1556395 (N.D. Ill. May 17, 2022)........................ 16, 18

*Roberts v. City of Chi.*,
  817 F.3d 561 (7th Cir. 2016) ............................................................ 4

*Rubin v. Marshall Field & Co.*,
  232 Ill. App. 522, 597 N.E.2d 688 (1992) ........................................ 8

*Rudy v. Fam. Dollar Stores, Inc.*,
  585 F. Supp. 3d 1149 (N.D. Ill. 2022) .............................................. 17

*Smith-Brown v. Ulta Beauty, Inc.*,
  18 C 610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019)............................ 18

*Stemm v. Tootsie Roll Indus., Inc.*,
  374 F. Supp. 3d 734 (N.D. Ill. 2019) .............................................. 6

*Tobey v. Chibucos*,
  890 F.3d 634 (7th Cir. 2018) ...................................................... 2, 3

*Tudor v. Jewel Food Stores*,
  288 Ill. App. 3d 207, 681 N.E.2d 6 (1997) ............................ 10, 11, 12, 14

*Ulrich v. Probalance, Inc.*,
  No. 16 C 10488, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017)................ 22, 23

*Vanzant v. Hill's Pet Nutrition*,
  934 F.3d 730 (7th Cir. 2019) ...................................................... 5

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ...................................................... 5, 7

*World Water Works Holdings Inc. v. Cont'l Cas. Co.*,
  392 F. Supp. 3d 923 (N.D. Ill. 2019) .............................................. 7

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq* ......... 1, 5

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.* ................................ 1, 5

## INTRODUCTION

Plaintiff Yoram Kahn ("Plaintiff") has filed a well-pleaded Complaint (ECF No. 1) ("Complaint")[1] against Defendant Walmart, Inc. ("Walmart" or "Defendant") that plainly lays out the compelling basis for Walmart's liability under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, the Illinois Deceptive Trade Practices Act ("UTDPA"), 815 ILCS 510/2, *et seq.* and for unjust enrichment while, substantiating class claims under those statutes and the similar laws of other states. In short, Walmart – the nation's largest retailer – targets consumers in Illinois and nationwide with deceptive and unfair pricing practices by inducing them to select products based on false price advertisements on Walmart store shelves and then charging them higher prices at checkout. Walmart's pricing practices are unfair and deceptive and have cost the putative class members hundreds of millions of dollars a year.

Walmart knows that its deceptive pricing practices result in continuous and systemic overcharges and consciously disregards the harm this causes its own consumers. Indeed, in 2012 Walmart was fined $2 million by then-California Attorney General, current Vice President, Kamala Harris, for violating a 2008 judgment requiring it to fix its pricing errors; Walmart has also been fined by numerous local agencies in multiple states for continuing to overcharge consumers. But these fines are economically meaningless to the $500-billion retailer. Though its existing technology and resources would allow it to have perfect price matching (*e.g.*, through electronic pricing or shelf price verification before scanner price changes), Walmart opts instead to increase profits by allowing the deceptive pricing to continue to the detriment of consumers.

In moving to dismiss, Walmart tacitly admits that it overcharges consumers as a result of its shelf pricing practices and suggests that Plaintiff should have sought a refund rather than file

---

[1] References to the Complaint are cited herein as "¶ _."

this lawsuit. This strategy is exactly why Walmart's deceptive practices have been able to continue. Walmart prefers to put the onus on its already-deceived customers to detect the fraud and to then seek immediate, small-scale redress. This case seeks exactly the refund Walmart suggests Plaintiff should have sought for himself, but also seeks it collectively on behalf of an overcharged class of similarly situated consumers.

Further, Walmart's defense that its pricing practices are not deceptive because the NIST allows price discrepancies of up to 2% is wrong.[2] Since 2012, the NIST expressly has stated that its guidance is not what Walmart claims. The NIST clearly warns that it is "*unlawful in all States to advertise a price that is not accurate.*" This is among the many reasons that the 1997 *Tudor* case relied on by Walmart is not applicable to the facts presented here, and otherwise has been distinguished by the Northern District of Illinois.

Walmart's remaining arguments in favor of dismissal are similarly deficient. Walmart ignores most of the well-pled facts and, as to the facts it does recite, attempts to suggest they mean something other than what they plainly say. Walmart also cites mostly inapposite case law to support its legal arguments, almost all of which are contrary to the prevailing law in this District. In sum, Plaintiff's allegations of fact clearly put Walmart on notice of the claims asserted against it, and its legal arguments must be rejected under the well-pled facts and controlling law.

### STATEMENT OF FACTS

When considering a Rule 12(b)(6) motion to dismiss, courts must accept as true all well-pleaded facts in the complaint. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). Further, "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support

---

[2] Defendant's Memorandum in Support of its Motion to Dismiss [ECF No. 26, and its exhibits] is referred to herein as its "Motion" and is cited herein as "Br. at __."

any facts ... that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). The court must draw all reasonable inferences in favor of the plaintiff. *See Tobey*, 890 F.3d at 645.

Walmart is a multi-national corporation that operates 184 stores in Illinois as well as stores across the country. ¶ 14. Walmart uses price advertisements on shelf signs and price displays ("Shelf Pricing") throughout its stores to enable consumers to calculate pricing differences among brands, identify bargains, and to induce them to purchase the advertised merchandise. ¶¶ 1-2, 22. However, Walmart's Shelf Pricing frequently misrepresents the prices consumers are charged at checkout and, as a result of this classic "bait and switch," consumers unknowingly overpay Walmart higher prices for certain merchandise at checkout (the "Overcharged Goods"). ¶ 3. Walmart's deceptive Shelf Pricing practices are company-wide, pervasive, and continuous, and affect various merchandise throughout Walmart's stores, costing consumers higher prices than what Walmart advertised to them. ¶¶ 4, 86. As a result, the putative class members have overpaid Walmart hundreds of millions of dollars a year by purchasing Overcharged Goods. ¶ 5.

Walmart knows its Shelf Pricing practices deceive consumers, as it has been fined for this practice by numerous state and local agencies across the country. ¶ 5, 34-36. But preventing Walmart from continuing its unfair and deceptive practices thus far has been a game of whack-a-mole for local agencies because even when Walmart is fined, the fines are a drop in the bucket for the $500-billion-dollar a year retailer and dwarf the hundreds of millions of dollars Walmart profits each year from selling Overcharged Goods. ¶ 5. So Walmart pays the fines but continues its false, unfair, and deceptive pricing practices. ¶¶ 5, 33. For example, despite being fined $15,000 for overcharging consumers as a result of the Shelf Pricing practices in five Walmart stores in North

Carolina in February 2022, Walmart continued to use deceptive Shelf Pricing to overcharge consumers at checkout at some of the same stores just six months later. ¶¶ 47-48. Thus, Walmart elects not to implement institutional systemic controls to prevent the practices, willfully continuing to mislead and overcharge its consumers. ¶¶ 33-37.

Plaintiff is an Ohio resident who purchased fifteen items at a Walmart store in Niles, Illinois; there, he was charged more at checkout for six of these items than what Walmart had advertised on the Shelf Pricing. ¶ 24. Plaintiff read and relied upon the false Shelf Pricing that was prepared and approved by Walmart. ¶ 26. For each purchase, Plaintiff understood that he was paying the price reflected on the Shelf Pricing and would not have purchased the Overcharged Goods but for the advertised Shelf Pricing. ¶¶ 26-27. As a result of the false Shelf Pricing, Plaintiff paid more for the Overcharged Goods than their value as reflected on the Shelf Pricing. ¶ 28.

## LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must 'state a claim for relief that is plausible on its face.'" *Roberts v. City of Chi.*, 817 F.3d 561, 564-65 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The court must "tak[e] all factual allegations as true and draw [ ] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

Similarly, "[m]otions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014); *see also Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (applying the same principle to motions under Rule 12(b)(6)). As when deciding a Rule 12(b)(6) motion, "[i]n the context of a motion to dismiss for lack of subject matter

4

jurisdiction, [the Court must] accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Iddir v. I.N.S.*, 301 F.3d 492, 496 (7th Cir. 2002).

**ARGUMENT**

**I.     PLAINTIFF HAS ADEQUATELY PLED HIS ICFA CLAIMS**

To state a claim under the ICFA, a plaintiff must allege that: "(1) the defendant engaged in deceptive or unfair conduct; (2) the defendant intended that the plaintiff rely on the deceptive or unfair conduct; (3) the deceptive or unfair conduct occurred in the course of conduct involving trade or commerce; and (4) the defendant's deceptive or unfair conduct caused actual damages. *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 736 (7th Cir. 2019); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).  Walmart contends that Plaintiff failed to allege the first and second elements. Br. at 3-5.[3]  Its arguments miss the mark.

**A.     Plaintiff Sufficiently Alleges Walmart's Intentional Deceptive Conduct Under the ICFA**

Plaintiff has sufficiently pled facts establishing that Walmart's false Shelf Pricing practices are "deceptive" within the meaning of the ICFA, and that Walmart intended that Plaintiff and other consumers rely on these deceptive statements.  The ICFA prohibits "unfair or deceptive practices, including . . . misrepresentation" (ICFA, 815 Ill. Comp. Stat. 505/1), and also prohibits any practice described in Section 2 of the UDTPA, which states that making "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" constitutes a deceptive practice. UDTPA, 815 Ill. Comp. Stat. 510/2(a)(11). *Accord* Compl. ¶¶ 22-26, 63, 67.

Further, under the ICFA, "a statement [also] is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 987

---

[3] Walmart does not dispute that Plaintiff has adequately pled that its Shelf Pricing practices are "unfair" under the ICFA and only challenges whether Plaintiff has adequately pled "deceptive conduct" under the ICFA. *See* Br. at 3-5.

5

(N.D. Ill. 2013) (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019). "What matters most is how real consumers understand and react to the advertising." *Bell v. Publix Super Markets*, 982 F.3d 468, 476 (7th Cir. 2020). This issue typically cannot be resolved at the pleading stage. *Id.* at 481 (district court erred in dismissing deceptive advertising claims because how reasonable consumers actually understand ads is a question of fact that could not be resolved on the pleadings); *accord Burton v. Hodgson Mill, Inc.*, Case No. 16-cv-1081-MJR-RJD, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) ("the determination of whether or not a reasonable consumer could be misled is an intricate question of fact that is best informed by a pool of members of the community").[4]

With respect to "deceptive conduct" alleged under the ICFA, Plaintiff has satisfied Rule 9(b) by pleading the "who, what, when, where and how" of the Walmart's deception. *See Benson v. Fannie May Confections*, 944 F.3d 639, 646 (7th Cir. 2019). To wit:

- On August 2, 2022, Plaintiff purchased 15 items from a Walmart store in Niles, Illinois and was charged more for 6 of the items at checkout than the prices misrepresented by the Shelf Pricing. ¶ 24.

- In selecting the items he did, Plaintiff relied on the Shelf Pricing and believed that he was paying the price reflected on the Shelf Pricing. ¶¶ 25-26. Instead, Plaintiff was overcharged by 9.4% to 15% for the Overcharged Goods. ¶ 24.

- Consumers reasonably rely on Shelf Pricing to make informed purchasing decisions (¶ 2), just as Walmart intends they do. ¶¶ 22, 84.

- Walmart is well aware that it is deceiving consumers as it has been fined for this deceptive practice multiple times and in multiple states. But this deceptive practice is too lucrative for Walmart to implement controls to prevent it; instead it simply pays paltry fines when levied by local agencies and carries on the deception. ¶¶ 5, 32-48. This is a pattern of conduct by Walmart whereby, it knowingly continues to mislead

---

[4] Further, when necessary factual determinations "cannot be made based on pleadings and isolated pictures of certain products on shelves," a Rule 12(b)(6) motion to dismiss an ICFA claim will be denied. *Grabowski v. Dunkin' Brands, Inc.*, No. 17 C 5069, 2017 WL 6059966, at *2 (N.D. Ill. Dec. 7, 2017).

consumers through its false Shelf Pricing so that it can profit from the hundreds of millions of dollars in overcharges consumers pay each year. *See id.* and ¶ 5.

These allegations are sufficient to plead that Walmart's false Shelf Pricing practices are deceptive misrepresentations regarding price reductions (as the ICFA and UDTPA language prohibits), and that these practices also create a likelihood of deception by their capacity to deceive reasonable consumers like Plaintiff. *See Camasta v. Omaha Steaks Int'l, Inc.*, No. 12-CV-08285, 2013 WL 4495661 at *1, *9 (N.D. Ill. Aug. 21, 2013) (allegations that the defendant falsely advertised its normal prices as "sales prices" sufficient to plead a deceptive act under the ICFA at the motion to dismiss stage); *see also Benson*, 944 F.3d at 646 (allegations that extra slack-fill misleads consumers sufficient because reasonable consumers rely on the size of packaging to infer the quantity of product); *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 863 (N.D. Ill. 2021) (finding that a reasonable consumer could interpret the word "orthodontic" to imply positive dental-health outcomes); *Benson v. Newell Brands, Inc*., No. 19 C 6836, 2020 WL 1863296, at *4 (N.D. Ill. Apr. 14, 2020) (same).[5]

Further, Plaintiff meets his pleading obligation with respect to Walmart's intent. Walmart incorrectly asserts that Plaintiff must plead that Walmart *intended to deceive* him. Br. at 4. "To satisfy [the ICFA's] intent requirement, plaintiff need not show that defendant intended to deceive the plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given." *Chow v. Aegis Mortg. Corp*., 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003); *Wigod*, 673 F.3d at 575 ("[i]t is enough to allege that the defendant committed

---

[5] Similarly, the Ohio Attorney General recently sued another retailer alleging that this same type of false shelf pricing / overcharge at the register is unlawfully deceptive under Ohio's consumer fraud statute. *See State of Ohio v. Dollar General Corporation*, No. CV 2022 11 1812 (Court of Common Pleas, Ohio) (Nov. 1, 2022), attached as Exhibit A. A court can take judicial notice of the contents of filings in other courts. *See World Water Works Holdings Inc. v. Cont'l Cas. Co.*, 392 F. Supp. 3d 923, 932 (N.D. Ill. 2019) ("Courts 'routinely take judicial notice of the actions of other courts or the contents of filings in other courts.'") (quoting *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016)).

a deceptive or unfair act and intended that the plaintiff rely on that act."); *see also McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, 135 N.E.3d 73, 80 (Ill. 2019) ("The plaintiff need not allege an intent to deceive on the part of the defendant, and [even] an innocent misrepresentation may be actionable under the Consumer Fraud Act."); *Barrett v. Brian Bemis Auto World*, 408 F. Supp. 2d 539, 544 (N.D. Ill. 2005) ("ICFA does not require a scienter showing."); *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 533, 597 N.E.2d 688, 695 (1992) (right to recovery "is unaffected by her alleged failure to show an intent to deceive"). Here, Plaintiff alleges the self-evident proposition that Walmart intended for consumers to rely on its Shelf Pricing when making purchasing decisions. ¶¶ 22, 84. That is all that is required at this stage.

Nonetheless, Plaintiff *has* also alleged facts showing that Walmart intends to deceive consumers through its false Shelf Pricing practices. Plaintiff has alleged facts evidencing that the overcharges are the result of a company-wide, systemic and pervasive practice that Walmart knows about, has been fined for, and does nothing to prevent because the overcharges result in hundreds of millions of dollars a year for Walmart. ¶¶ 32-48, 84-86. Thus, although not required, Plaintiff has also sufficiently alleged facts supporting that Walmart intends to deceive consumers.

Walmart does not even attempt to grapple with these well-pled facts, or the above standards for pleading an ICFA claim at the Rule 12(b)(6) stage. Instead, Walmart mischaracterizes the Complaint as merely asserting "a price discrepancy" for which it asserts it is not liable. Br. at 4. In support of its position, Walmart first cites to the "Handbook" published by the National Institute of Standards and Technology of the U.S. Department of Commerce ("NIST") as adopted by the 106th National Conference on Weights and Measures ("NCWM"), which Walmart mistakenly claims "allows for 2% of items in a retail store to have price discrepancies" and wrongly implies

therefrom that inaccurate price scanning below that 2% threshold is somehow not actionable. *Id.* (and Br., Ex. B).

That is not at all what the "Handbook" states or stands for. To the contrary, the NCWM Handbook clearly presents its procedures as recommendations to potential-adopting localities, and expressly states that it should not be "*construed or interpreted to redefine any state or local law or limit any jurisdiction from enforcing any law, regulation, or procedures that relates to the accuracy of advertisements of retail prices*…." *See* Br., Ex. B at 207.[6]  And as the NIST itself clarifies in the FAQs on its website, an official website of the U.S. government: "It is unlawful in all States to advertise a price that is not accurate.  It would be incorrect to interpret [the guideline] to mean that stores are allowed to have 2% of their products incorrectly priced":

> 8. **Does this mean stores can have 2 % of their products priced incorrectly?**
> It is unlawful in all States to advertise a price that is not accurate. It would be incorrect to interpret the EPPV to mean that stores are allowed to have 2 % of their products incorrectly priced. Federal law also prohibits "unfair or deceptive acts or practices in or affecting commerce."1 The error rate in the EPPV is only a guideline to help regulatory officials evaluate whether a store has good pricing practices and must not be interpreted to mean that any error is "acceptable" or that errors do not need to be corrected immediately after they are identified.

*See https://www.nist.gov/pml/owm/laws-and-regulations/price-verification* (stating these FAQs were created January 30, 2012 and updated October 8, 2019).

Further, Walmart ignores Plaintiff's allegations that Walmart historically has failed to comply with NCWM standards, or variations of those adopted by state and local regulators, and has been fined numerous times for such violations. *See* ¶¶ 32-48.  Indeed, Plaintiff himself was overcharged for 6 of 15 items on August 2, 2022 (¶ 24), amounting to an inaccuracy rate of *40%*

---

[6] The stated purpose of these kinds of testing and enforcement procedures is "to ensure that consumers are charged the correct price for the items they purchase." Br., Ex. B at 207.  Similarly, NY Pricing Laws and Regulations, § 197-B(3)(b), cited by Walmart, states only that testing procedures shall be consistent with the NCWM; it does not absolve retailers from liability to consumers for overcharges. *Id.*

– a far cry from the 2% inaccuracy rate Walmart wrongly suggests is "allowed." Br. at 4. Thus, the NCWM recommendations do not refute Plaintiff's allegations of deception.

Walmart next relies solely on *Tudor v. Jewel Food Stores*, 288 Ill. App. 3d 207, 681 N.E.2d 6 (1997) – a 25-year-old case that involved the accuracy of scanned prices for the assertion that Walmart's false Shelf Pricing practices are not deceptive. Br. at 5. However, *Tudor* is distinguishable from this case, including for the same dispositive reasons cited by Judge Lefkow when she denied a motion to dismiss after analyzing and distinguishing *Tudor* in *Camasta*, 2013 WL 4495661, at *9-10.

In a superficial sense, *Tudor* involved a claim similar to the one at issue here, *i.e*., that the defendant violated the consumer fraud statute by charging a scanned price at checkout higher than the price offered "in the newspaper and on the shelf." *See* Br. at 5 (citing *Tudor*, 288 Ill. App. 3d at 209-210). Beyond that, however, Walmart's reliance on *Tudor* goes off the rails. First, contrary to Walmart's representation, the court in *Tudor* did not state "that it is virtually impossible for a retailer to have 100% accurate Shelf Pricing," and *Tudor* was not dismissed because of any rule of law or "finding that the defendant had not engaged in a deceptive practice or act just because the prices charged for a few items did not match the shelf pricing." *Cf.* Br. at 5. Rather, *Tudor* was dismissed because the plaintiff there pled other facts that negated her own claim of a deception.

In dismissing the claims in *Tudor*, the court noted the following:

> However, plaintiff also pleaded that defendant's internal audits show its electronic scanners were accurate 96% of the time from 1991 through 1993, which exceeds the 75% to 92% accuracy rate indicative of a "serious violation" according to the Law and Regulations Committee of the National Conference of Weights and Measures. Further, plaintiff pleaded that defendant provided her with a receipt enabling her to determine whether the scanned prices accurately reflected the advertised and shelf prices. Plaintiff also pleaded that defendant has a policy providing "if the scanned price on any unmarked item is different from the price on the shelf, you will get the item free." ***The combination of the high accuracy rate of the scanners, along with the issuance of a receipt and defendant's policy of***

> *providing a money-back guarantee if the scanned price differs from the shelf*
> *price, indicates there was no deception* by defendant.

*Tudor*, 288 Ill. App. 3d at 210 (emphasis added).  Other than the issuance of a receipt, none of those other determinative facts are pled here.  To the contrary:

First, unlike *Tudor* (where the plaintiff alleged that the defendant was 96% accurate – a higher rate than what was considered a "serious violation" in 1997), here Plaintiff makes no allegation of a high accuracy rate of Walmart's scanned prices.  To the contrary, Plaintiff alleges that Walmart's Shelf Pricing was inaccurate for 40% of the items he purchased on one shopping trip ¶ 24.  This inaccuracy rate far exceeds the NCWM-increased 98%-accuracy guidance cited by Walmart.  Further, it is significant that **fifteen years after *Tudor* was decided**, in 2012, the U.S. Government published its clarification on the significance of the 2% error rate "guideline": "***It is unlawful in all States to advertise a price that is not accurate. It would be incorrect to interpret the [guidelines] to mean that stores are allowed to have 2% of their products incorrectly priced.***"  Yet Walmart argues —incorrectly, according to the U.S. Government — that the recommendation "allows for 2% of items in a retail store to have price discrepancies." Br. at 4.

Second, unlike *Tudor* (where the plaintiff alleged that the defendant had a published policy to offer the item for free, expressly applicable "if the scanned price on any unmarked item is different from the price on the shelf"), here Plaintiff makes no allegation of any such Walmart policy.  Nor does Walmart even suggest any such policy exists in its Motion.[7]

---

[7] Walmart wants a "heads I win, tails you lose" result:  it first burdens consumers by putting the onus on them to verify Walmart's Shelf Pricing (something Walmart itself chooses not to do despite having the technology to do so) by going back into the store and painstakingly matching the Shelf Pricing for every item purchased to the prices charged and reflected on receipts; if overcharges are not noticed or if consumers do not spend the additional time required to request a refund or adjustment, then Walmart keeps the excess price; if consumers notice overcharges and request adjustments, Walmart simply puts the consumers back where they should have been, albeit charged with annoyance and wasted time.

While Walmart suggests in its Motion that this harm is *de minimis*, asserting that this class action is "based on this $1.89 price discrepancy" (Br. at 1), this is precisely why individual consumers may not take the time

In the absence of such analogous allegations here, and without mentioning them at all, Walmart intentionally oversimplifies *Tudor* and argues that the issuance of a receipt to the defrauded consumer established the defendant had no intent to deceive. Br. at 5 (citing *Tudor*, 288 Ill. App. 3d at 210). Not only is this a disingenuous representation of what *Tudor* stands for, but it is incorrect as a matter of law that the issuance of a receipt alone absolves a deceptive retailer of fraud. *See e.g., Camasta*, 2013 WL 4495661, at *9 (that plaintiff "learned of defendants' alleged deceptive practice after the purchase of the steaks does not compel dismissal at this stage").[8]

In *Camasta*, Judge Lefkow denied a Rule 12(b)(6) motion to dismiss that similarly relied on *Tudor* in the way Walmart attempts. There, the plaintiff was induced to purchase steaks based on allegedly misleading signage of "sale prices." *Id.* at *1-3. The plaintiff received a receipt that showed the actual price he paid, and that also included a money-back guarantee "for any reason at all." *Id.* at *1. Like Walmart, the defendant argued that under *Tudor* these facts precluded a finding of deception. The court disagreed. In particular, Judge Lefkow found, "Unlike in *Tudor*, however, where the money back guarantee specifically highlighted the [type of conduct that could lead to the] overpayment at issue and the plaintiff admitted that charges were 96% accurate, here Camasta's allegations do not foreclose a finding that defendants' advertising practices were deceptive." 2013 WL 4495661, at *9 (holding that money back guarantees do not foreclose a

---

to seek individual small-scale redress for the fraud. Even assuming arguendo only 2% of Walmart's U.S. sales for fiscal year 2022 were overpriced by 10%, this would result in $797 million in overcharges for just that year. This is exactly what class action are for – to aggregate small claims that are otherwise not likely going to be pursued.

[8] Ironically, Walmart asserts that Plaintiff was given a receipt that accurately reflected the prices he was charged, and implies through criticism in its Motion that Plaintiff should have requested a refund rather than bring this lawsuit. *See* Br. at 1, 5. However, that's exactly the purpose of this lawsuit – Plaintiff and the putative class wish to obtain refunds (*i.e.*, damages) for the overcharges they paid as a result of the fraud (in addition to preventing Walmart from continuing to overcharge them and other consumers in the future).

finding of deception, and neither do receipts issued at the time of purchase). The court held that at the pleading stage, the plaintiff had sufficiently alleged a deceptive practice.

Lastly, *Tudor* is further distinguishable because unlike here, it did not involve allegations of a company-wide practice that knowingly caused the fraud. Here, Plaintiff alleges a continuous, systemic, company-wide deceptive practice of false Shelf Prices that lead to consumer overpayments. Plaintiff believes that discovery will show that because Walmart systemically changes its prices in its computer system before it requires prices to be changed on its shelves, virtually every price change leads to a period of false Shelf Pricing – a deceptive and unfair practice that can be easily avoided. This is completely different than the simple pricing errors alleged in *Tudor*. Thus, the facts in this case are even further removed from *Tudo*r than those distinguished in *Camasta*, and Plaintiff has alleged sufficient facts establishing Walmart's deceptive practice and its intent that Plaintiff rely on the deception.

### B.    Plaintiff Has Properly Pled Unfair Acts or Practices Under the ICFA

Walmart asserts only that Plaintiff has not met the pleading requirements to state an ICFA claim for "deceptive conduct;" it does not challenge that Plaintiff also has pled a claim for "unfair conduct." *Compare Benson*, 944 F.3d at 646-47 (recognizing that there are two types of ICFA claims that have different pleading standards, and that "unfair conduct" is not subject to the heightened Rule 9(b) standard). However, Plaintiff has also pled facts establishing that Walmart's false Shelf Pricing practices are unfair under the ICFA.

"False advertising alone is an unfair practice under the ICFA." *Bonahoom v. Staples, Inc.*, 2021 WL 1020986, at *5 (N.D. Ill. Mar. 17, 2021) (citing *Benson*, 944 F.3d at 647). Under the ICFA, unfair conduct either (i) offends public policy; (ii) is immoral, unethical, or oppressive; or (iii) causes substantial injury to consumers." *Id*. at *5. "A court may find unfairness even if the claim does not satisfy all three criteria." *Benson*, 944 F.3d at 647 (citation omitted). In Paragraph

13

69 of the Complaint, after incorporating all of the prior allegations of fact, Plaintiff asserts Walmart's actions also offend public policy, are immoral, unethical and unscrupulous, and are and were substantially injurious to consumers. ¶ 69.[9]

## II. PLAINTIFF HAS ADEQUATELY PLED MULTI-STATE CONSUMER CLASS CLAIMS

This is a putative class action, which by its nature means that Plaintiff is bringing claims on behalf of himself and others who are similarly situated. Here, Plaintiff seeks to remedy the deceptive and unfair business practices Walmart has engaged in nationwide by placing false price advertisements on its shelves but then charging consumers higher prices at checkout. ¶¶ 1-3. While Plaintiff was the victim of this deceptive practice in an Illinois Walmart store (*see* ¶ 24), there is significant factual evidence alleged that this deceptive practice occurs on a multi-state and nationwide basis (*see e.g.*, ¶¶ 38-48), and that a reasonable consumer in any of these places could be deceived by Walmart's false Shelf Pricing practices (*see supra* Section 1.A). Thus, while Counts I and II seek to redress harm to the putative class of consumers deceived by Walmart's

---

[9] *See Bonahoom*, 2021 WL 1020986, at *5 (plaintiff adequately pled an unfair practice under the ICFA through allegations of false advertisements and overcharges); *Jackson v. SFC Global Supply Chain, Inc*, 3:20-cv-01072-DWD, 2021 WL 37772696, at *3 (S.D. Ill. Aug. 25, 2021) (because label falsely stated that pizza crust was preservative free, and false advertising is unfair under the ICFA, the plaintiff stated a claim for unfair conduct (without more)); *Benson*, 944 F.3d at 647 (allegations that the defendant misrepresented the quantity of candy in a box and made consumers believe they were receiving more sufficient to satisfy "federal notice pleading standards" of unfair practices).

While *Tudor* dismissed the plaintiff's "unfair" practices claim, it did so based solely on the court's finding that the plaintiff failed to show "oppressiveness and lack of meaningful choice necessary to establish unfairness." *Tudor*, 288 Ill. App. 3d at 210. However, *Tudor* failed to address the two remaining factors relevant to whether conduct is "unfair" under the ICFA (*i.e.*, whether the conduct offends public policy or causes substantial injury to consumers). *See Bonahoom*, 2021 WL 1020986, at *5 (noting that all three factors need not be satisfied and that "[a] significant showing that any of the three factors is met is enough; so too are facts that, to a lesser degree, satisfy all three.") (citation omitted).

false pricing practices within Illinois (¶¶ 61-87),[10] Counts III and IV seek relief on behalf of the putative multi-state classes deceived in those states and under those states' laws. ¶¶ 88-107.

The ICFA operates similarly to the statutes of the other states identified in the Complaint. ¶¶ 51 (and n.13), 52 (and n.14). Courts in this District apply the states' consumer protection laws interchangeably because, "while they differ in certain particulars, all share a common requirement: to state a claim, a plaintiff must allege conduct that plausibly could deceive a reasonable consumer." *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 920 (N.D. Ill. 2017) (analyzing claims brought under the statutes of Alabama, California, Connecticut, Florida, Illinois, Michigan, Minnesota, Missouri, New Jersey, and New York and collecting cases). Thus, Plaintiff's allegations plausibly state a claim under the consumer protection laws of the ICFA and 31 other States, as well as the 15 States that presently are included in the UDTPA class. ¶¶ 51 (n.13) and 52 (n.14).

Walmart again mischaracterizes the Complaint as somehow asserting that Plaintiff, as an individual, is seeking relief in other states for the harm that occurred to him in Illinois or "based on purchases made by his attorney." Br. at 6. In order to do so, Walmart needs to pretend that the Complaint does not assert a putative class action, *i.e.*, on behalf of other persons similarly aggrieved. Obviously, Plaintiff does not attempt to claim personal relief for his Illinois-based purchases under other states' laws, but the putative multi-state classes do.

Walmart also argues that because Plaintiff has not pled an exhaustive list of states with similar laws, the Complaint should be dismissed. Br. at 6-7. This argument fails because it is a class certification issue. Courts in this District routinely (and recently) deny motions to dismiss

---

[10] Walmart implies that Plaintiff's Count I and II claims, brought under two Illinois consumer fraud statutes, are not substantially tied to Illinois. Br. at 6. The suggestion is absurd, as the Complaint makes it abundantly clear that Plaintiff experienced Walmart's deceptive practices in Illinois. ¶ 24.

brought on this basis, holding that the time to analyze whether any substantive distinctions between the states' laws impact this action, to the extent they exist, is during a Rule 23 motion, not a Rule 12(b) motion. *See Rawson v. Aldi*, No. 21-CV-2811, 2022 WL 1556395, at *5 (N.D. Ill. May 17, 2022) (denying motion to dismiss putative class claims brought under New York and 33 other state consumer protection statutes and holding that argument "goes to the propriety of class certification"); *Freeman*, 528 F. Supp. 3d at 859 (denying motion to dismiss class claims under multiple states' consumer protection statutes and noting that any difference in the states' substantive legal standards is a question for class certification); *Bonahoom*, 2021 WL 1020986 at *2-3 (denying motion to dismiss multi-state consumer claims where complaint alleged that the defendant violated the ICFA "as well as other materially identical consumer fraud statutes enacted by states throughout the country").

    *Freeman* is particularly instructive and is discussed in detail in Section IV.A below with respect to Walmart's "standing" argument. Just as the defendants in *Rawson*, *Freeman* and *Bonahoom*, here Walmart is on sufficient notice of the claims asserted against it and any potential variations in states' laws will be addressed at class certification.

## III.    PLAINTIFF HAS ADEQUATELY PLED A CLAIM FOR UNJUST ENRICHMENT

    Walmart first argues that Plaintiff's unjust enrichment claim (Count V) should be dismissed because it is not a separate cause of action and, presumably then, that it should be dismissed for the same reasons raised in the other portions of its Motion. Br. at 7-8. For the reasons stated elsewhere herein, none of the claims should be dismissed at this stage.

    Plaintiff adequately pled his consumer fraud claims under the ICFA and, therefore, has adequately pled his unjust enrichment claim which is premised on the same conduct. *See Bonahoom*, 2021 WL 1020986, at *8 (noting that the same allegations that show deceptive

16

advertising and unfair conduct support a claim for unjust enrichment). In addition, and specifically pled in the alternative to the extent of any overlap (¶ 109),[11] Plaintiff alleges that Walmart was unjustly enriched, at Plaintiff's expense, as a result of the deceptive conduct, which makes it unjust for Walmart to retain that benefit. ¶¶ 108-118. Thus, Plaintiff has pled facts establishing the elements of unjust enrichment under Illinois law. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) ("To state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.").

Walmart also challenges whether Plaintiff is permitted to plead an unjust enrichment claim on behalf of a nationwide class, due to variations in state law. This again is Rule 23 class certification argument and is premature at the pleading stage. *See Newell Brands*, 2020 WL 1863296, at *5 (rejecting the argument that the law of unjust enrichment varies too much from state to state as premature); *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-CV-05828, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (holding that it "would be premature and that material differences in applicable state law can be resolved through different means at the class certification stage."); *see also Freeman*, 528 F. Supp. 3d at 868 (upholding unjust enrichment claims brought on behalf of a nationwide class). Accordingly, Walmart's motion to dismiss Plaintiff's unjust enrichment claims should be denied.

## IV.    PLAINTIFF HAS ARTICLE III STANDING TO BRING HIS CLAIMS

There is no question that Plaintiff has Article III standing. Plaintiff suffered an injury (he was overcharged) caused by Walmart's deceptive and unfair conduct (false Shelf Pricing at a

---

[11] This claim for relief is separate and distinct, and expressly is pled in the alternative to the other claims alleged in the Complaint. ¶ 109. *See Rudy v. Fam. Dollar Stores, Inc.*, 585 F. Supp. 3d 1149, 1166 (N.D. Ill. 2022) (denying motion to dismiss unjust enrichment claim where pled in the alternative to ICFA claim).

Walmart store) that is redressable (damages, restitution, and injunctive relief). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### A. Plaintiff has Standing to Pursue Claims on Behalf of Out-Of-State Purchasers

Walmart mistakenly argues that Plaintiff lacks standing to represent classes of purchasers whose claims arise under states' laws other than Illinois. Br. at 9. The Seventh Circuit has recognized that this argument is not actually about standing, but is about whether a plaintiff can satisfy the class certification requirements of Rule 23; and the argument routinely has been rejected by courts in this District deciding motions to dismiss. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("[p]laintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by judicial decision" and noting that the "application of choice-of-law principles has nothing to do with standing, though it may affect whether a class should be certified."); *accord Kinman v. Kroger Co.*, No. 21 C 1154, 2022 WL 1720589, at *9 (N.D. Ill. May 27, 2022) (plaintiff had standing to assert class consumer fraud claims regarding states other than where she made purchases); *Rawson*, 2022 WL 1556395, at *5 ("The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing. … The cases applying the prevailing view generally agree that standing only requires that the plaintiff allege a concrete and particularized injury based on the defendant's conduct, which, in cases like this one, is usually met for the named-plaintiff in consumer protection class-action cases.");[12] *Bonahoom*, 2021 WL 1020986, at *3; *Newell Brands,*

---

[12] Judge Alonso, who decided *Rawson* in 2022, also decided *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *5-6 (N.D. Ill. Feb. 26, 2019), a case heavily relied upon by Walmart in support of its argument that Plaintiff does not have standing to represent absent class members. Br. at 9 n.6, 10. However, as Judge Alonso recently stated in *Rawson*, this is no longer the prevailing view in this District. *See Rawson*, 2022 WL 1556395, at *5.

*Inc.*, 2020 WL 1863296, at *4; *Freeman*, 528 F. Supp. 3d at 859 (holding same, and noting this "is a question to be answered after discovery on the propriety of class certification—not right out of the box by an overbroad application of Article III standing to proposed class actions").

In *Freeman*, Judge Chang persuasively explained the absurdity of arguing that out-of-state consumer class claims should be dismissed at the pleading stage:

> [Defendant] argues that [plaintiff] cannot bring claims on behalf of out-of-state class members, framing this as a purported problem of Article III standing. . . . But [plaintiff's] Article III standing on the damages claims is secure: she alleges that she suffered an injury in fact; the injury is fairly traceable to the allegedly false advertising; and the Court can redress the injury with money damages. ***For everyone else in the proposed class, she is proposing to serve as a class representative, not seeking to redress an injury specific to her***—of course she herself did not pay for the pacifiers bought by each proposed class member. ***That is the whole point of a class action: to represent the interests of class members, not just the representative's own interests.*** If [defendant] is right about how Article III standing applies to proposed class actions—that is, that a plaintiff can only raise claims under her own State's laws—then no multi-state or nationwide class can ever be certified without a representative from each and every State in the proposed class. ... What [defendant] is really challenging is whether [plaintiff] (or, actually, any Illinois resident who bought pacifiers only in Illinois) can satisfy the Civil Rule 23 class-certification requirements as applied to a nationwide and multi-state class.

528 F Supp. 3d at 859 (emphases added).

Rather than address the slew of recent decisions in this District on this exact issue, Walmart ignores the "prevailing view" and cites almost exclusively to out-of-circuit cases. Aside from being decided under another jurisdiction's laws, these cases are readily distinguishable. For example, in

---

Walmart's other authorities fail for the same reason. *In re Wellbutrin XL*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) and *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011), aside from being outside this Circuit, are in direct conflict with the holdings of the majority of courts within this District. Further, even if this was a standing issue, as opposed to a class certification issue, it would be more appropriate for the Court to defer its resolution to class certification. *See In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4888, 2009 WL 3754041, at *5 (N.D. Ill. Nov. 5, 2009) (finding standing and noting that because "the name[d] plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification," "[t]hese are class certification issues 'logically antecedent' to the standing concerns).

*Knapp v. Zoetis Inc.*, No. 3:20CV191, 2021 WL 1225970, at *9 (E.D. Va. Mar. 31, 2021), the plaintiff did not have standing to assert her *individual* claims under New Jersey law because Virginia law applied; because the plaintiff lacked standing to bring her own claims, she similarly lacked standing to represent a nationwide class.

Walmart also wrongly relies on *Carpenter v. PetSmart, Inc.,* 441 F. Supp. 3d 1028, 1040 n.4, 1041 (S.D. Cal. 2020), which held that plaintiff did not have standing to assert claims under another state's laws based on the court's interpretation of *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017). Br. at 9. However, the Seventh Circuit since has rejected this interpretation in *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 443 (7th Cir. 2020) ("We see no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific jurisdiction, but the unnamed class members are not required to do so."). "[T]here is no need to locate each and every [unnamed class member] and conduct a separate personal-jurisdiction analysis of their claims." *Id*. at 447-48. Post-*Mussat*, the prevailing view in this District is that plaintiffs have standing to represent class members' out-of-state claims.[13] [14]

As stated in detail in Section II above, Plaintiff has adequately pled facts establishing his standing to bring class claims in Illinois and on behalf of class members in other states. Walmart's argument for dismissal based on lack of standing is thus, premature and without merit.

---

[13] *See Freeman*, 528 F. Supp. 3d at 860-62 (analyzing *Bristol-Myers* and *Mussat* and holding that the reasoning in *Mussat* applies to class actions brought in federal court asserting state law claims, and thus the plaintiff had standing to assert class claims based on other state's laws).

[14] Walmart's reliance on *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 39766, at *6 (N.D. Ill. Jan. 9, 2012) and *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,* No. 09 CV 3690, 2013 WL 4506000, at *7 (N.D. Ill. Aug. 23, 2013) fare no better as they both pre-date *Mussat* and are in direct conflict with the prevailing view in this District.

**B.** **Plaintiff Can Represent Class Members Harmed By the Same Walmart Deceptive Practice as Plaintiff Experienced**

Walmart next argues that Plaintiff does not have standing to bring claims "about products he did not purchase." Br. at 10-11. To support this straw man argument, Defendant twists the allegations and pitches that this is a "back door" attempt to assert class claims regarding "countless unidentified products" that Plaintiff did not himself purchase. *Id*. That is not the nature of this lawsuit at all.

This case is about ***Walmart's deceptive pricing practices***; it is not directed at or limited to specific "products" sold in Walmart stores. Cases involving deceptive pricing practices are distinct from cases involving deceptive products and courts treat them as such. In deceptive pricing cases, plaintiffs have standing to challenge the deceptive pricing schemes as applied to items that the plaintiff did not purchase, as long as the plaintiff purchased at least one item with the challenged deceptive price markings. *See Chester v. TJX Cos., Inc.*, No. 5:15-CV-01437-ODW-DTB, 2016 WL 4414768, at *7 (C.D. Cal. Aug. 18, 2016) ("a challenge to reference pricing is more analogous to cases challenging labeling practices, not the products themselves, and thus the variance in product is of little importance in comparison to the misrepresentation scheme").[15]

As the *Chester* court elaborated, in a deceptive pricing case factually analogous to this one: "[t]o say that Plaintiff Chester only has standing to sue on behalf others who purchased [the same item plaintiff purchased] is to make a mockery of the false advertising class action itself and, based on such logic, a clear way to burden an already overburdened judicial system." *Id.*; *see also*

---

[15] For this reason, the cases cited by Walmart are completely inapposite. In *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *4, *9 (N.D. Ill. Sept. 22, 2016) and *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016), the cases involved allegedly deceptive advertising on a particular product's label; they did not involve retailers' deceptive advertising practices and in fact the retail stores where the products were purchased were not even defendants in those cases.

*Keating v. Nordstrom, Inc.*, No. 3:17-CV-00030-SLG, 2018 WL 6431879, at *7 (D. Alaska Oct. 19, 2018) ("It could be possible for a plaintiff to have standing to sue regarding items others had purchased if a plaintiff were to adequately plead a storewide false advertising scheme. However, the Court declines to address at this stage of the litigation whether Plaintiffs have adequately pleaded a storewide false advertising scheme; such determination can be made when and if class certification is sought.").[16]  Walmart is simply wrong in suggesting that Plaintiff's claims are predicated on an injury which he did not share. Br. at 11.[17] As such, Plaintiff has Article III standing.

### C.  Plaintiff Has Standing to Pursue Injunctive Relief

In its final argument, Walmart asserts that Plaintiff cannot make a claim for injunctive relief because he has not alleged a threat of future harm or facts to support a contention that he will be deceived going forward. Br. at 11.  Walmart's argument, and the cases it cites, is premised on the incorrect assumption that because Plaintiff is now aware of Walmart's deceptive practices there is no likelihood of future injury. *Id.*  But this argument ignores the allegations that Walmart has engaged in years-long unfair and deceptive pricing practices that are company-wide, continuous,

---

[16] *See also Chase v. Hobby Lobby Stores, Inc.,* No. 17-cv-00881-GPC-BLM, 2017 WL 4358146, at *7 (S.D. Cal. Oct. 2, 2017) (plaintiff had standing on behalf of others who purchased Hobby Lobby products who were similarly misled by the store's in-store advertisements"); *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255, at *5 (S.D. Cal. Apr. 26, 2017) (finding plaintiff had standing to sue on behalf of purchasers of other Sears items bearing in-store price tags because he is challenging the pricing scheme, not the product).

[17] Even applying the "substantially similar" test that is often applied in product-specific cases, Plaintiff has standing because he seeks to represent consumers who were exposed to substantially similar deceptive advertising. *See Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014) (quoting *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013) ("the majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar"); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *1, *6 (N.D. Ill. Aug. 18, 2017) (same).

and systemic, and that it continues its deceptive pricing practices even in stores in which it has been fined for having done so. ¶¶ 32-48. Such allegations are sufficient to establish that Plaintiff and the class may be harmed again. *See Le v. Kohls Dep't Stores, Inc*., 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016) (rejecting defendant's argument that the plaintiff's "'awareness' of Kohls' alleged pricing scheme somehow strips him of Article III standing" to seek injunctive relief).[18]

*Le v. Kohls Department Stores, Inc*. is directly on point. Like Plaintiff here, the plaintiff in *Le* alleged that the defendant engaged in "a company-wide, pervasive and continuous" false pricing practices scheme whereby, Kohls advertised original prices for items that did not reflect a price at which Kohls' products were routinely (if ever) sold. *Id.* at 1099. As here, the defendant argued that the plaintiff lacked standing to seek injunctive relief because he was now aware of the deceptive price scheme. *Id*. at 1108. The court disagreed, noting that "although it may be appropriate in the context of a product-specific complaint, the Court cannot agree that Kohls' argument applies with the same force where, as here, the complaint is aimed at 'company-wide, pervasive, and continuous' false advertising claims." *Id*. at 1110. In this context, it explained:

> without further factual development, the Court is unclear just exactly what Le would be expected to be 'aware' of in order to avoid future harm from Kohls. For example, should Le be 'aware' that housewares are deceptively priced, while men's apparel is not? Should Le be 'aware' that Kohls' holiday sales are more egregiously deceptive than their day-to-day offers? These hypothetical questions underscore the point that discovery is necessary to parse out the salient facts in relation to Le's claim for relief.

---

[18] None of the cases Walmart relies upon involved a systemic, continuous deceptive practice. Br. at 11. *See Freeman*, 528 F. Supp. at 857 (citing *Le* and noting that Freeman did not allege widespread false advertising across products, and instead targeted the labelling on pacifiers.); *Benson v. Fannie Mae Confections*, No. 17 C 3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28. 2018) (J. Ellis) (plaintiff not likely to be harmed by deceptive product packaging in the future); *Ulrich*, 2017 WL 3581183, at *7 (no threat that the misleading product labels will deceive plaintiff again).

160 F. Supp. 3d at 1110.[19]

The same reasoning applies here. Plaintiff alleges that Walmart engages in a systemic, pervasive, and continuous campaign of false and deceptive pricing practices, even in stores in which it previously has been fined for such deception.  ¶¶ 5, 32-48, 86, 106.

As to the likelihood of future harm, the Complaint alleges:

- On Plaintiff's August 2022 trip to an Illinois Walmart store, 6 of the 15 items he purchased that day (40%) had Shelf Prices that advertised lower prices than the Overcharge Prices he paid at the register. ¶ 24.

- Consumers, including Plaintiff, reasonably rely on the Shelf Pricing to make informed decisions about which products they will purchase while in a store, and reasonably expect to pay the advertised Shelf Price when they check out.  ¶¶ 2, 25-26.  Walmart intends the Shelf Prices to have this effect.  ¶ 22.

- The alleged deceptive advertising practices has been occurring at Walmart stores all over the country as far back as 2008. *See* ¶ 34.

- Walmart knows this occurs, and knows that it occurs all over the country, as evidenced by the relatively paltry fines Walmart has paid in California and North Carolina.  ¶¶ 34-36.

- The fines are insufficient—as compared to the profitability of the deceptive practice—to cause Walmart to put controls in place to stop the practice.  ¶¶ 5, 32.

- To wit, Walmart has continued this deceptive behavior even in the same places in which it was previously fined. (*e.g.*, In California it received a new fine in 2012, after a prior fine in 2008 (¶ 35); in North Carolina, it has continued the deception in the exact same stores for which it was fined in February 2022).  ¶¶ 46-48.

**"[A]round 140 million customers visit Walmart in person or online every week, many of them checking off their grocery lists**."[20]  Just as the *Le* court posited, these consumers cannot

---

[19] *Le* specifically noted that *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) – a case relied upon by Walmart – was "factually distinguishable" because the plaintiff in *Camasta* failed to plead any allegations establishing that the deceptive practices were company-wide, pervasive or in any way likely to harm the plaintiff again. *Le*, 160 F. Supp. 3d at 1111.

[20] *See* https://corporate.walmart.com/newsroom/business/20161003/the-grocery-list-why-140-million-americans-choose-walmart (emphasis added).

know which of the hundreds of thousands of items available in their Walmart store will have deceptive Shelf Prices on the day they shop.[21]  Instead, consumers' in-store shopping decisions are in part driven by the Shelf Prices themselves, just as Walmart intends. ¶ 22. Because millions of people shop at Walmart and only a fraction of their purchases on a given day will be subject to deceptive Shelf Pricing, which items they cannot know in advance, and because Walmart continues this behavior even in locations in which it has been caught and fined by local authorities, there is a significant threat of future harm alleged in and implied by the Complaint.  Thus, the injunctive relieve sought—requiring Walmart to implement systemic controls to ensure that Plaintiff and other class members are not again victims to this deception—is completely warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied.

**DATED:**  November 22, 2022                 Respectfully submitted,


                                              /s/ Stanley D. Bernstein
                                              STANLEY D. BERNSTEIN


**GINGOLD LEGAL**                             **BERNSTEIN LIEBHARD LLP**
Scott Gingold                                 Stanley D. Bernstein
1326 Isabella Street                          Sandy A. Liebhard
Evanston, IL 60201                            Stephanie M. Beige
 (773)793-9093                                10 East 40th Street
scott@gingoldlegal.com                        New York, New York 10016
                                               (212)779-1414
                                              Bernstein@bernlieb.com
                                              Liebhard@bernlieb.com
                                              Beige@bernlieb.com

---

[21]  *See https://corporate.walmart.com/newsroom/2005/01/06/our-retail-divisions* (stating that Walmart Discount stores offer 120,000 items; Walmart Superstores have 142,000 different items for sale; etc…).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 22, 2022, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.


<u>/s/ Stephanie M. Beige</u>
Stephanie M. Beige