UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 22 C 4177 |
| v. | ) ) | |
| | ) | Judge Sara L. Ellis |
| WALMART, INC., | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

After Defendant Walmart, Inc. charged Plaintiff Yoram Kahn more than the prices reflected on the store shelf for certain items that he purchased, Kahn filed this putative class action against Walmart. Kahn brings claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/1 *et seq.*, and other similar state consumer protection statutes. Kahn also brings a claim for unjust enrichment. Walmart filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Kahn has not sufficiently alleged the required elements of his claims and any attempt to amend to do so would be futile, the Court grants Walmart's motion and dismisses this case with prejudice.

## BACKGROUND[1]

Walmart uses shelf pricing to advertise merchandise prices and enable consumers to calculate pricing differences between brands and identify bargains, as well as to induce consumers to purchase the advertised merchandise. But Walmart's shelf pricing does not always reflect the price it charges consumers at the point of sale, causing consumers to pay higher prices at checkout. Various agencies have imposed fines on Walmart for this practice. In 2012, the State of California assessed a $2 million fine against Walmart for violating a 2008 ruling requiring it to resolve pricing errors at checkout. In November 2021, the North Carolina Department of Agriculture and Consumer Services fined two Walmart stores in Wilmington, North Carolina after an investigation found repeated and excessive scanning errors that caused customer overcharges on between three and seven percent of purchases each month. An additional five Walmart stores, including one of the previously fined stores, had to pay over $15,000 in fines for overcharging consumers due to price scanning errors in February 2022.

Kahn, an Ohio resident, visited a Walmart store at 5630 W. Touhy Avenue, Niles, Illinois, on August 2, 2022. Kahn read and relied on the shelf pricing in deciding what to purchase. Ultimately, Kahn purchased fifteen items, with a pretax total of $27.69. Reviewing his receipt, Kahn determined that Walmart charged him more than the listed shelf price on six of the items he purchased: (1) strawberry Kit-Kats, which shelf pricing advertised as costing $1.64 but which rang up at checkout at $1.88 (a 14% markup); (2) Reese's Minis dessert topping,

---

[1] The Court takes the facts in the background section from Kahn's complaint and presumes them to be true for the purpose of resolving Walmart's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

which shelf pricing advertised as costing $2.00 but which rang up at checkout as $2.28 (a 14% markup); (3) Hershey strawberry syrup, which shelf pricing advertised as costing $2.48 but which rang up at checkout as $2.87 (a 15% markup); (4) Chi-Chi's mild salsa, which shelf pricing advertised as costing $2.00 but which rang up at checkout as $2.28 (a 14% markup); (5) Entenmann's Lite Bite banana muffins, which shelf pricing advertised as costing $3.60 but which rang up at checkout as $3.94 (a 9.4% markup); and (6) Hostess chocolate cupcakes, which shelf pricing advertised as costing $3.12 but which rang up at checkout as $3.48 (an over 11% markup).

Kahn's counsel performed additional investigation of shelf pricing across the country, including in Florida, Indiana, Maryland, New Jersey, and New York, finding examples of overcharges at various stores. Counsel also found that, despite being fined in February 2022 for overcharges, two Walmart stores in North Carolina continued to have overcharges in August 2022.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

## ANALYSIS

**I.  ICFA Claim**

Kahn brings claims of deception and unfair conduct under ICFA, "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17 (2002)). To state an ICFA claim, Kahn must allege (1) a deceptive or unfair act or practice by Walmart, (2) Walmart's intent that Kahn rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred during a course of conduct involving trade or commerce, and (4) Walmart's deceptive or unfair practice proximately caused Kahn actual

4

damage.² *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Kahn may recover for either deceptive or unfair conduct. *See Robinson*, 201 Ill. 2d at 960. Although Kahn uses language of unfairness in his complaint, he premises his ICFA claim on Walmart's alleged concealment of the actual prices of its items, and so the Court interprets it solely as a deceptive practices claim that must meet Rule 9(b)'s heightened pleading standard. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) ("Although Haywood brings one ICFA claim alleging unfair practices, that claim still sounds in fraud because it relies upon the same baseline allegation that Massage Envy intentionally misled consumers by hiding information on the length of massage time."); *Jos. A. Bank*, 761 F.3d at 737 (addition of "unfairness" language did not change ICFA claim "entirely grounded in fraud" to an unfairness claim); *Pirelli*, 631 F.3d at 446–47 (pleading premised on intentional concealment appropriately interpreted as deceptive practices claim subject to Rule 9(b), not unfair practices claim subject to Rule 8).

  Walmart argues that Kahn has not sufficiently alleged a deceptive act or that Walmart intended that he rely on any alleged deception. Walmart essentially argues that the price discrepancy between the shelf price and the scanner price amounted to a mere error and that the issuance of a receipt allowed Kahn to check the charges, dispelling any deception and establishing that Walmart had no intent to deceive. An act "is deceptive if it creates a likelihood

---

² Unlike for common law fraud, reliance is not an element of an ICFA claim. *See, e.g.*, *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576–77 (7th Cir. 2001) (affirming dismissal of common law fraud claim because the plaintiff could not show it relied on oral representations different from contract terms, while allowing the ICFA claim to proceed past motion to dismiss based on the same facts because reliance is not a required element of an ICFA claim).

of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). In making this determination, the Court considers the allegedly deceptive act "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Walmart relies heavily on *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207 (1997), to argue that Kahn has not sufficiently alleged that Walmart engaged in a deceptive act. As here, in *Tudor*, the plaintiff alleged that the defendant charged her a price higher than that advertised on the shelf. *Id.* at 210. She also alleged, however, that the defendant's internal audits indicated its scanners were accurate 96% of the time from 1991 through 1993, the defendant provided her with a receipt to allow her to compare the scanned prices with the advertised prices, and the defendant had a money-back guarantee if the scanned price differed from the shelf price. *Id.* The *Tudor* court concluded that "[t]he combination of the high accuracy rate of the scanners, along with the issuance of a receipt and defendant's policy of providing a money-back guarantee if the scanned price differs from the shelf price, indicates there was no deception by defendant." *Id.*

Although Kahn contends that Walmart's accuracy rate is much lower than that in *Tudor* and he has not alleged that Walmart has a similar money-back guarantee, the Court finds the reasoning in *Tudor* applies equally to this case, where Walmart provides its customers with a receipt to compare the scanned price with the shelf price. "Illinois law is clear that where other information is available to dispel [a tendency to mislead], there is no possibility for deception." *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018). Here, Walmart provided Kahn with a receipt, reflecting the incorrectly scanned prices. Kahn could, and indeed did, use this receipt to compare the prices Walmart charged him with the advertised shelf pricing.

6

This comparison revealed the discrepancy and dispelled any potential deception.³ *See id.* at 1013–14 (no deception where store displayed prices near registers and a comparison between the prices for individual items as opposed to a bundled meal "would have dispelled the deception" that "could be drawn from the name 'Extra Value Meal'"); *Fuchs v. Menard, Inc.*, No. 17-cv-01752, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) (consumers' "direct and complete access to the information needed" to determine the accuracy of the defendant's statements defeated a claim of deception); *Saunders v. Mich. Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 313 (1996) (no deception existed for allegedly hidden overdraft fee where the defendant disclosed the fee in a pamphlet that the plaintiff received).

Additionally, the Court finds that Kahn cannot adequately allege ICFA's intent element. "To satisfy the intent requirement, plaintiff need not show that defendant intended to deceive the plaintiff, but only that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given." *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003). Here, in light of the fact that Walmart provided Kahn with a receipt against which he could, and indeed did, compare the shelf price to the scanned price to determine if they differed, the Court cannot find that Walmart intended for Kahn to rely on the incorrectly scanned price. *See Tudor*, 288 Ill. App. 3d at 210 (1997) ("[T]he combination of the issuance of the receipt, along with the money-back guarantee if the scanned price differs from the shelf

---

³ Kahn relies heavily on *Camasta v. Omaha Steaks International, Inc.*, No. 12-cv-08285, 2013 WL 4495661 (N.D. Ill. Aug. 21, 2013), to argue that *Tudor* does not compel dismissal in this case. But the underlying alleged deceptive conduct in *Omaha Steaks* differs from that in *Tudor* and here, with the plaintiff in that case alleging that the defendant had a pattern and practice of advertising the normal retail price as a temporary price reduction. *Id.* at *1. Therefore, the Court does not find *Omaha Steaks* persuasive, as nothing suggests that the provision of the receipt in *Omaha Steaks* would have dispelled the deception, as it did here.

7

price, indicates defendant did not intend that plaintiff rely on an incorrectly scanned price.");[4] *cf. Omaha Steaks*, 2013 WL 4495661, at *10 (plaintiff sufficiently alleged the intent element where, among other things, the plaintiff could not "determine what the normal retail price is by comparing his receipt to defendants' various advertisements"). Because Kahn cannot plead two of the required elements of his ICFA claim, the Court dismisses that claim.

## II. Remaining Claims

Kahn's remaining claims fail for the same reasons as his ICFA claim. His UDTPA claim requires an allegation of a false, misleading, or deceptive representation, made with the intention that the consumer rely on the misrepresentation. 815 Ill. Comp. Stat. 510/2; *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997). Kahn alleges that Walmart violated the UDTPA in the same way it violated ICFA: by advertising one price on the shelf while selling the items at a higher, scanned price. As the Court has already found, Kahn cannot plead the required deceptive conduct or intent to deceive, and so his UDTPA claim fails for the same reasons as his ICFA claim.

Similarly, absent a plausible allegation of deception, Kahn's claim for unjust enrichment fails. *See Bober*, 246 F.3d at 943 ("[I]n the absence of any deception on the part of the defendants, the requisite [elements of unjust enrichment are] not present."). Moreover, a claim for unjust enrichment cannot stand on its own in light of the Court's dismissal of Kahn's ICFA and UDTPA claims. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019) ("[T]he request for relief based on unjust enrichment is tied to the fate of the claim under the

---

[4] In *Tudor*, the plaintiff acknowledged in her complaint that the defendant had a money-back guarantee for overcharges. 288 Ill. App. 3d at 210. Here, Kahn makes no such allegation nor does Walmart point us to any such policy that the Court could consider in ruling on Walmart's motion to dismiss. Nonetheless, the Court finds that *Tudor*'s reasoning concerning ICFA's intent requirement applies with equal force here where Kahn received a receipt identifying the prices Walmart charged him for the items he purchased, allowing him to identify any discrepancies between the scanned and shelf prices and raise any such discrepancies with Walmart.

Consumer Fraud Act."); *Martis v. Grinnell Mut. Reins. Co.*, 388 Ill. App. 3d 1017, 1024 (2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery.").

Finally, because the Court has concluded that Kahn has not adequately pleaded claims under Illinois' consumer fraud statutes, leaving him without any individual claim, he cannot pursue his class claims. *See Bryant v. All Ways Auto Transp., LLC*, No. 1:22-cv-00906, 2022 WL 17338295, at *6 (N.D. Ill. Nov. 30, 2022) ("Class action claims cannot be filed by class representatives who have no individual claims, because they lack standing and have no 'personal stake in the outcome.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974))). Thus, the Court dismisses Kahn's claims on behalf of a multi-state class for violations of other states' consumer protection statutes.[5] *See Bondick v. Ricoh Imaging Ams. Corp.*, No. 21 C 6132, 2022 WL 2116664, at *8 n.4 (N.D. Ill. June 13, 2022) ("Plaintiff also brings a claim for the violation of state consumer fraud acts on behalf of the proposed Consumer Fraud Multi-State Class. Since Plaintiff's own state-based consumer fraud act is dismissed, the proposed class has not been certified, and no other claims brought by the individual Plaintiff remain, this claim is also dismissed.").

### III. Dismissal with Prejudice

Having found that Kahn has not sufficiently pleaded any of his claims, the Court must determine whether to dismiss his complaint with or without prejudice. Although courts typically grant leave to amend liberally, the Court may divert from this general rule where amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (court may dismiss complaint with prejudice "[w]here it is clear that the defect cannot be corrected so that amendment is futile"); *Vargas-Harrison v. Racine*

---

[5] Because no claims remain, the Court need not address Walmart's other arguments for dismissal.

*Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (leave to amend is futile if a new claim would be unable to survive a Rule 12(b)(6) motion to dismiss). Here, providing Kahn with the opportunity to amend his complaint would be futile because he cannot correct the defects the Court has identified with his individual claims. Therefore, the Court dismisses Kahn's individual claims with prejudice and his class claims without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Walmart's motion to dismiss [25]. The Court dismisses Kahn's individual claims with prejudice and his putative class claims without prejudice. Case terminated.

Dated: March 21, 2023

_____
SARA L. ELLIS
United States District Judge