**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>WALMART, INC.,<br><br>               Defendant. | Case No. 1:22-cv-04177<br><br>Hon. Judge Sara L. Ellis<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

      Plaintiff Yoram Kahn, by and through his undersigned counsel, brings this amended class action complaint against Defendant Walmart, Inc. ("Walmart" or the "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's counsel.

<u>**NATURE OF THE ACTION**</u>

      1.     This action seeks to address and remedy the unfair and deceptive business practices Walmart has engaged in by placing false and misleading price advertisements on shelf signs and price displays ("Shelf Pricing") throughout its stores in Illinois and nationwide.

      2.     Walmart uses Shelf Pricing to advertise prices for merchandise to enable consumers to calculate pricing differences among brands, identify bargains, and to induce consumers to purchase the advertised merchandise. Consumers reasonably rely on Shelf Pricing to make

1

informed purchasing decisions, and reasonably expect to pay the advertised Shelf Price when they reach the checkout.

3.     However, Walmart's Shelf Pricing frequently misrepresents the prices consumers are charged at the point of sale.  As a result, consumers fall victim to a classic "bait and switch," and unknowingly overpay Walmart a higher price for the falsely-advertised merchandise at checkout (the "Overcharged Goods").

4.     The false and misleading Shelf Pricing affects various merchandise throughout Walmart's stores, with Overcharged Goods costing consumers higher prices in a range of 5-10%, and some much higher.

5.     Walmart is well aware that it is deceiving its consumers. In fact, Walmart has been fined for this practice in multiple states. But preventing Walmart from continuing its unfair and deceptive practices thus far has been a game of whack-a-mole for local agencies because even when Walmart is fined, the fines are a drop in the bucket for the $500 billion-dollar retailer and dwarf the hundreds of millions of dollars Walmart profits each year from selling Overcharged Goods. So, Walmart pays the fines but continues its misleading, unfair and deceptive pricing practices.

6.     Walmart's false, misleading, unfair and deceptive pricing practices violate the consumer protection statutes of Illinois and the other states in the Multi-State Classes, as well as the common laws of all states where Overcharged Goods are sold at Walmart stores.

7.     Plaintiff brings this action on behalf of a class of persons who purchased Overcharged Goods from Walmart stores located in the United States within the applicable statute of limitations (the Classes are defined below), and seeks, *inter alia*, actual damages, refunds, injunctive relief, attorneys' fees, and the costs of this litigation.

## JURISDICTION AND VENUE

8.      The Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts significant amounts of business in Illinois. Walmart has 184 retail stores in Illinois, with 58,139 employees working in those stores.[1] Additionally, because Defendant marketed, promoted, distributed, and sold the Overcharged Goods to Plaintiff in Illinois, the claims arise out of or relate to Defendant's contacts with Illinois, subjecting Defendant to personal jurisdiction in Illinois.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

11.     Venue is also proper under 28 U.S.C. § 1391(c) because Defendant is a corporation that does business in and is subject to personal jurisdiction in this District.

## PARTIES

12.     Plaintiff Yoram Kahn is a citizen of Ohio.

13.     On August 2, 2022, while traveling in Illinois, Plaintiff purchased Overcharged Goods at a Walmart store located in this judicial district at 5630 W. Touhy Avenue, Niles, Illinois.

14.     Walmart is a multi-national corporation that operates chains of retail and grocery stores. Walmart is incorporated in Delaware and its principal offices are located in Bentonville, Arkansas. Walmart has 184 retail stores in Illinois, employing 58,139 in these stores, and

---

[1] *See* https://corporate.walmart.com/about/illinois (claiming figures are as of April 2022).

distributes, markets, advertises, and sells the Overcharged Goods in Illinois, this judicial district, and throughout the United States.

## FACTUAL ALLEGATIONS

### A.    Walmart's Business Model

15.    Walmart's business model focuses on "help[ing] people around the world save money and live better . . ." and its strategy is "to make every day easier for busy families . . . and make trust a competitive advantage . . . includ[ing] our commitment to price leadership, which has been and will remain a cornerstone of our business. . . ."[2]

16.    Walmart's operations comprise of three reportable business segments: Walmart U.S., Walmart International and Sam's Club. Walmart U.S. is the Company's largest segment, operating in all 50 states, Washington D.C. and Puerto Rico. Walmart U.S. is a mass merchandiser of consumer products, operating under the "Walmart" and "Walmart Neighborhood Market" brands, including Walmart.com.[3]

17.    Walmart U.S. does its business in three strategic merchandise units:

**Grocery**:  consisting of a full line of grocery items, including dry grocery, snacks, dairy, meat, produce, deli & bakery, frozen foods, alcoholic and nonalcoholic beverages, as well as consumables such as health and beauty aids, pet supplies, household chemicals, paper goods and baby products;

**General Merchandise**: consisting of: Entertainment (*e.g.*, electronics, toys, seasonal merchandise, wireless, video games, movies, music and books); Hardlines (*e.g.*, automotive, hardware and paint, sporting goods, outdoor living and stationery); Apparel (*e.g.*, apparel for men, women, girls, boys and infants, as well as shoes, jewelry and accessories); and Home (*e.g.*, housewares and small appliances, bed & bath, furniture and home organization, home furnishings, home décor, fabrics crafts).

---

[2]    Walmart 2022 Annual Report, Walmart, Inc. (March 18, 2022) at 6, *available at*: https://s2.q4cdn.com/056532643/files/doc_financials/2022/ar/WMT-FY2022-Annual-Report.pdf    (the "2022 Annual Report").

[3] 2022 Annual Report at 7.

**Health and Wellness:** including pharmacy, over-the-counter-drugs and other medical products, optical services and other clinical services.[4]

18.    Historically, the Walmart U.S. segment has had the highest gross profit as a percentage of net sales ("gross profit rate"). In addition, the Walmart U.S. segment has historically contributed the greatest amount to Walmart's net sales and operating income.[5]

19.    For its fiscal years, Walmart reported: $572.754 billion in revenues from February 1, 2021 to January 31, 2022; $559.151 billion in revenues from February 1, 2020 to January 31, 2021; and $523.964 billion in revenues from February 1, 2019 to January 31, 2020.[6]

20.    Walmart's total consolidated revenues are driven by its revenues from Walmart U.S. Specifically, in its fiscal year 2022, Walmart U.S. alone reported $470.295 billion in revenues representing over 80% of Walmart's total revenues. Additionally, no individual country other than the U.S. had total revenues that were material to Walmart's reported consolidated total revenues.[7]

21.    The overwhelming majority of Walmart U.S.'s sales come from consumers purchasing merchandise at Walmart brick and mortar store locations. For fiscal year 2022, in-store sales represented approximately 88% of Walmart U.S.'s total net sales.[8]

**B.    Walmart Deceived Plaintiff and Class Members with its False, Misleading, Unfair and Deceptive Pricing Practices Resulting in Actual Damage to Plaintiff and Class Members**

22.    Walmart uses Shelf Pricing to advertise prices, price changes and bargains inside its stores, which are designed to, and do, induce consumers in Illinois and throughout the United

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at 38.

[7] *Id.* at 78.

[8] *Id.*

States, including Plaintiff and Class members, into selecting the advertised goods from among similar products located nearby on the shelf and into believing that they will pay the price advertised.

23. In reality, however, after being enticed by the Shelf Pricing to purchase the advertised items, Plaintiff and Class members are charged higher prices for Overcharged Goods at checkout.

24. For example, on August 2, 2022, Plaintiff purchased Overcharged Goods at Walmart's store located at 5630 W. Touhy Avenue in Niles, Illinois. As shown below, Plaintiff was charged higher prices for certain merchandise at checkout than what Walmart advertised on its Shelf Pricing:

     **a.**      **Strawberry Kit-Kats:** Walmart's Shelf Pricing advertised that the candy cost $1.64. Plaintiff was charged and paid $1.88 at checkout (a 14% markup) (highlighting added for easy reference):



**b.** **Reese Minis Dessert Topping:** Walmart's Shelf Pricing advertised that the candy cost $2.00. Plaintiff was charged and paid $2.28 at checkout (a 14% markup) (highlighting added for easy reference):



**c.** **Hershey Strawberry Syrup:** Walmart's Shelf Pricing advertised that the candy cost $2.48. Plaintiff was charged and paid $2.87 at checkout (a 15% markup) (highlighting added for easy reference):



**d.** **Chi-Chi's Mild Salsa:** Walmart's Shelf Pricing advertised that the salsa cost $2.00. Plaintiff was charged and paid $2.28 at checkout (a 14% markup) (highlighting added for easy reference):



**e.** **Entenmann's Lite Bite Banana Muffins:** Walmart's Shelf Pricing advertised that the muffins cost $3.60. Plaintiff was charged and paid $3.94 at checkout (a 9.4% markup) (highlighting added for easy reference):



f.    **Hostess Chocolate Cupcakes:** Walmart's Shelf Pricing advertised that the muffins cost $3.12. Plaintiff was charged and paid $3.48 at checkout (a markup of over 11%) (highlighting added for easy reference):



25.    Plaintiff considers Shelf Pricing in making his shopping decisions; and the Shelf Pricing in Walmart on August 2, 2022 materially drove his shopping decisions that day.

26.    Prior to purchasing these Overcharged Goods, Plaintiff read and relied upon Defendant's false and misleading Shelf Pricing that was prepared and approved by Walmart. For each purchase, he understood that he was paying the price reflected on the Shelf Pricing and such pricing was being offered by Walmart.

27.    Plaintiff purchased Overcharged Goods based on Walmart's Shelf Pricing and would not have purchased the Overcharged Goods but for the advertised Shelf Pricing.

28.    Plaintiff suffered actual damages because he paid for more for the Overcharged Goods than the value of the merchandise as reflected on the Shelf Pricing.

9

C. **The Federal Trade Commission Forbids Walmart's Unfair and Deceptive Pricing Practices**

29.     The Federal Trade Commission (the "FTC") requires that any retailer who offers price comparisons "should make certain that the bargain offer is genuine and truthful. Doing so will serve their own interest as well as that of the general public." 16 C.F.R. § 233.5.

30.     When a retailer offers an item for sale, then, the offer must be entirely genuine and truthful, and not contain any deceptive or unfair aspect.

31.     Walmart, however, fails to comply with this FTC guideline. Instead, through its unfair and deceptive pricing practices, Walmart deceives consumers into paying more for Overcharged Goods than the value represented on Walmart's Shelf Pricing.

D. **Walmart Willfully Engages in Systemic and Pervasive Unfair and Deceptive Pricing Practices**

32.     Walmart knows that it overcharges consumers through its unfair and deceptive pricing practices.  Even though Walmart has been fined locally for these practices — essentially a slap on the wrist for this $500-billion-dollar retailer — it has continued to allow its stores to charge more for Overcharged Goods than what is advertised on the deceptive Shelf Pricing and elects not to implement institutional systemic controls to prevent such practices, willfully continuing to mislead and overcharge consumers.

33.     For example, at least two state agencies have taken action against Walmart for its unfair and deceptive pricing practices and its overcharging of consumers, resulting in millions of dollars in fines.

34. For example, in 2012, the state of California, led by then-Attorney General Kamala Harris, assessed Walmart a $2 million fine for violating a 2008 ruling requiring it to resolve pricing errors at checkout.[9]

35. Similarly, in November 2021, the North Carolina Department of Agriculture and Consumer Services fined two Walmart stores in Wilmington, North Carolina after an investigation found "repeated" and "excessive" price-scanner errors that resulted in customer overcharges.[10] Specifically, the investigation found overcharges on between 3% to 7% of purchases *each month*. During an August 2021 inspection, 21 out of 300 items purchased, or 7% of the purchases resulted in overcharges.

36. As recently as February 2022, five Walmart stores in North Carolina were required to pay fines of more than $15,000 for price scanning errors resulting in overcharging consumers.[11]

37. Store-specific fines in the thousands of dollars, and even a statewide $2 million fine — if and when Walmart is caught, and if and when state agencies elect to investigate — are not an effective deterrent to this $500-billion corporation. Walmart continues its false, misleading, unfair and deceptive pricing practices unabated.

---

[9] *Available at:* https://www.sandiegouniontribune.com/sdut-walmart-fined-21-million-overcharging-customers-2012mar21-htmlstory.html

[10] *Available at:* https://www.starnewsonline.com/story/news/2021/11/09/wilmington-nc-walmart-dollar-general-fined-price-scanning-errors/6358289001/

[11] *Available at:* https://www.ncagr.gov/paffairs/release/2022/Twenty-twostorespayfinesforpricescanningerrors.htm

38.     Plaintiff's counsel's investigation identified numerous and frequent overcharges at stores examined across many of the United of the States during the relevant period, including Walmart stores located in Illinois.

39.     For example, in June 2022, the Shelf Pricing at a Walmart located at 3626 Touhy Avenue, Skokie, Illinois advertised that: (1) Sweet Ray's BBQ Sauce cost $2.98, when the price at checkout was $3.60; (2) Ragu Old World Style Traditional Sauce cost $1.78, when the price at checkout was $1.96; and (3) S. Rosen Bread cost $3.38, when the price at checkout was $3.88.

40.     Similarly, in August 2022, the Shelf Pricing at a Walmart located at 137 W. North Avenue, Northlake, Illinois advertised that: (1) Scotch Gift Wrap cost $5.14, when the price at checkout was $5.34; and (2) GV LED Light Bulbs cost $3.94, when the price at checkout was $4.12.

41.     Additionally, during the relevant period, Plaintiff's counsel's investigation identified Walmart's unfair and deceptive pricing practices throughout the United States, including stores located in Florida, Indiana, Maryland, New Jersey, New York, and other states, demonstrating that the unfair and deceptive practices are not limited to Illinois and extend from coast-to-coast. Paragraphs 42 through 48 contain a non-exhaustive set of examples:

42.     **Florida**: In February 2022, the Shelf Pricing at Walmart located at 301 S. State Road 7, Hollywood, Florida advertised that: (1) StarKist Chunk Light Tuna cost $1.00, when the price at checkout was $1.24; (2) Florida Natural Orange Juice cost $2.98, when the price at checkout was $3.18; (3) Pitted Queen Olives cost $5.57, when the price at checkout was $5.94; (4) Crisco Vegetable Oil cost $2.00, when the price at checkout was $2.34; and (5) McCormick Black Pepper cost $3.18, when the price at checkout was $3.62.

43.    **Maryland**: In April 2022, the Shelf Pricing at Walmart located at 1 Frankel Way in Cockeysville, Maryland advertised that Idahoan Buttery Golden Selects Mashed Potatoes cost $1.00, when the price at checkout was $1.12.

44.    **New Jersey**: In January 2022, the Shelf Pricing at Walmart located at 326 Main Street, Freehold, New Jersey advertised that: (1) Crisco Pure Canola Oil cost $3.12, when the price at checkout was $3.64; and (2) Del Monte Fresh Cut Diced Potatoes cost $0.98, when the price at checkout was $1.18; in January 2022, the Shelf Pricing at Walmart located at 4900 U.S. Highway #9, Howell, New Jersey advertised that: (1) Great Value Chocolate Syrup cost $1.38, when the price at checkout was $1.74; and (2) Hershey Chocolate Syrup cost $2.33, when the price at checkout was $2.48; and in May 2022, the Shelf Pricing at Walmart located at 1872 Route 88, Brick, New Jersey advertised that: (1) Oreo Fireworks Chocolate Sandwich Cookies cost $3.58, when the price at checkout was $4.28; and (2) Libby's Whole Sweet Corn cost $0.82, when the price at checkout was $0.98.

45.    **Pennsylvania**: In January 2022, the Shelf Pricing at Walmart located at 100 Lunger Drive, Bloomsburg, Pennsylvania advertised that: (1) Hanover Garbanzo Beans Chick Peas cost $0.92, when the price at checkout was $0.98; and (2) McCormick Black Pepper cost $3.18, when the price at checkout was $3.62.

46.    Further, Plaintiff's investigation revealed that even in North Carolina – a state in which Walmart has been fined for its unfair and deceptive pricing practices – Walmart continues to use deceptive Shelf Pricing to overcharge consumers at checkout – even at the very same stores that had been fined for overcharging consumers as recently as February 2022.

47.    For example, in August 2022, the Shelf Pricing at Walmart located at 1205 Eastern Avenue, Nashville, North Carolina advertised that: (1) Celestial Seasonings, Country Peach

13

Passion Herbal Tea cost $2.72, when the price at checkout was $2.98; (2) Campbell's Condensed Tomato Soup cost $1.18, when the price at checkout was $1.26; and (3) Sunbeam Queen Enriched White Bread Loaf cost $2.52, when the price at checkout was $2.84.

48.     Similarly, in August 2022, the Shelf Pricing at Walmart located at 1049 Durham Road, Roxboro, North Carolina advertised that: (1) Entenmann's Little Bites Fudge Brownie Mini Muffins cost $3.60, when the price at checkout was $3.94; (2) Popcorners Kettle Corn Popped Corn Snacks cost $3.28, when the price at checkout was $3.68; (3) Snyder's of Hanover Nacho Cheese Twisted Pretzel Sticks cost $3.38, when the price at checkout was $3.68; and (4) Wild Style Garlic Parmesan Sauce cost $2.62, when the price at checkout was $3.34.

## CLASS DEFINITIONS AND ALLEGATIONS

49.     Pursuant to Rule 23(b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the proposed Classes.[12] Plaintiff brings this action on behalf of himself and the proposed Nationwide Class:

> All persons who purchased merchandise from a Walmart store in the United States, within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for merchandise than the advertised shelf-prices (the "Nationwide Class").

50.     Pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and 23(b)(3), Plaintiff brings this action on behalf of himself and the proposed Illinois Class:

> All persons who purchased merchandise from a Walmart store in the State of Illinois, within the applicable statute of limitations, and paid higher prices for merchandise than the advertised shelf-prices (the "Illinois Class").

---

[12] Unless otherwise specified, all references in this Complaint to "Classes" or the "Class" refer collectively to the Nationwide Class, the Illinois Class, the Multi-State Consumer Protection Class, and the Multi-State Uniform Deceptive Trade Practices Act ("UDTPA") Class.

51.     Pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the proposed Multi-State Consumer Protection Class:

> All persons who purchased merchandise from a Walmart store in the State of Illinois or any state with similar laws,[13] within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for the merchandise than the advertised shelf-prices (the "Multi-State Class").

52.     Pursuant to Federal Rules of Civil Procedure Rule 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of himself and the proposed Multi-State Uniform Deceptive Trade

Practices Act ("UDTPA") Class:

> All persons who purchased merchandise from a Walmart store in the State of Illinois or any state that has adopted similar UDTPA laws,[14] within the applicable statute of limitations, until the date notice is disseminated, and paid higher prices for merchandise than the advertised shelf-prices (the "Multi-State UDTPA Class").

---

[13] While discovery may alter the following, Plaintiff asserts that the other states with similar consumer fraud laws under the fact of this case include but are not limited to: California (Cal. Civ. Code § 1770(a)(9)); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, et seq.); Delaware (Del. Code tit. 6, §§ 2511, et seq.); District of Columbia (D.C. Code § 28-3901, et seq.); Florida (Fla. Stat. § 501.201, et seq.); Hawaii (Haw. Rev. Stat. § 480-1, et seq.); Idaho (Idaho Code § 48-601, et seq.); Illinois (815 ICLS § 505/1, et seq.); Maryland (Md. Comm. Law Code Ann. § 13-1301, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws § 445.311, et seq.) (the notice requirement set forth in § 445.311, et seq. does not apply where, as here, the seller intentionally charges more for a consumer item than the price displayed for the item in pursuant to Mich. Comp. Laws § 445.319(4)); Minnesota (Minn. Stat. § 325F.67, et seq.); Minnesota (Minn. Stat. § 325F.67, et seq.); Missouri (Mo. Rev. Stat. § 407.010, et seq.); Nebraska (Neb. Rev. Stat. § 59 1601, et seq.); Nevada (Nev. Rev. Stat. § 598.0915, et seq.); New Hampshire (N.H. Rev. Stat. § 358A:1, et seq.); New Jersey (N.J. Stat. Ann. § 56:8-1, et seq.); New Mexico (N.M. Stat. § 57-12-1, et seq.); New York (N.Y. Gen. Bus. Law § 349, et seq.); North Dakota (N.D. Cent. Code § 51-15-01, et seq.); Oklahoma (Okla. Stat. tit. 15, § 751, et seq.); Oregon (Or. Rev. Stat. § 646.605, et seq.); Pennsylvania (73 Pa. Stat. § 201-1 et seq.); Rhode Island (R.I. Gen. Laws § 6-13.1-1, et seq.); South Dakota (S.D. Code Law § 37-24-1, et seq.); Utah (Utah Code § 13-11-1, et seq.); Virginia (VA Code § 59.1-196, et seq.); Vermont (Vt. Stat. tit. 9, § 2451, et seq.); Washington (Wash. Rev. Code § 19.86.010, et seq.); West Virginia (W. Va. Code § 46A-6-101, et seq.).

[14] While discovery may alter the following, Plaintiff asserts that the other states with similar UDTPA statutes under the facts of this case include but are not limited to: Colorado (Colo. Rev. Stat. § 6-1-105, et seq.); Delaware (Del. Code tit. 6, § 2531, et seq.); District of Columbia (D.C. Code § 28-3901, et seq.); Georgia (Ga. Code § 10-1- 372, et seq.); Hawaii (Haw. Rev. Stat. § 481A, et seq.); Idaho (Idaho Code § 48-601, et seq.); Illinois (815 ICLS § 510/1, et seq.); Maine (10 M.R.S.A. § 1210, et seq.); Minnesota (Minn. Stat. § 325D.43, et seq.); Mississippi (MS Code § 75-24-1, et seq.); Nebraska (Neb. Rev. Stat. § 87-301, et seq.); New Hampshire (Nev. Rev. Stat. § 598.0901, et seq.); New Mexico (N.M. Stat. § 57-12-1, et seq.); Oklahoma (Okla. Stat. Ann. tit. 15 § 751, et seq); and Wyoming (Wyo. Stat. Ann. §40-12-101, et seq.).

53.     Excluded from the Classes are: (i) the Defendant, and any entity in which any Defendant or its subsidiaries of affiliates have a controlling interest, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iv) all persons who make a timely election to be excluded from the Classes; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

54.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**: The members of the proposed Classes are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and is in the exclusive control of Defendant, it is ascertainable by appropriate discovery. Plaintiff is informed and reasonably believes that Class members include hundreds of thousands of people or more, who are geographically diverse so that joinder of all Class members is impracticable.

55.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including: (i) whether Walmart's pricing practices are false, deceptive, misleading, unfair and/or unlawful; (ii) whether Walmart's pricing practices with respect to Shelf Pricing and Overcharge Goods are false, deceptive, misleading, unfair and/or unlawful; (iii) whether Walmart's conduct violates the Illinois Consumer Fraud Act and Deceptive Business Practices Act; (iv) whether Walmart's violation is willful or grossly negligent; (v) whether Walmart should be enjoined from continuing to charge consumers higher prices for merchandise than is advertised on its Shelf Pricing, or required to implement systemic controls to ensure the same; (vi) whether Plaintiff and the Class members sustained actual damages; and (vii)

whether Walmart has unjustly enriched itself by deceptively overcharging customers for Overcharged Goods.

56.     **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were injured through the substantially uniform misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of the other Class members arise from the same operative facts and are based on the same legal theories.

57.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4):** Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

58.     **Superiority – Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties

17

and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

59.     Further, Defendant has acted or refused to act on grounds generally applicable to each of the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to members of the Classes as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

60.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE ILLINOIS
### CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
**(On Behalf of Plaintiff and the Illinois Class)**

61.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-60 as if fully set forth herein.

62.     Plaintiff brings this action individually and on behalf of the Illinois Class.

63.     In Illinois, the Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq*. (the "ICFA") prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."  In turn, the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2(a) provides in pertinent part that a "person engages in a deceptive trade practice

18

when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(9) advertises goods or services with intent not to sell them as advertised; . . . (11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

64.     The ICFA was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.

65.     Plaintiff is a "consumer" as defined by 815 Ill. Comp. Stat. 505/1(e).

66.     The subject transaction for Overcharged Goods is "trade" or "commerce" as defined by 815 Ill. Comp. Stat. 505/1(f).

67.     Defendant violated the ICFA by, within its Illinois stores, engaging in the unfair and deceptive pricing practices described herein and proscribed by ICFA, 815 Ill. Comp. Stat. 505/2 and, by incorporation therein, 815 Ill. Comp. Stat. 510/2.

68.     Defendant's actions constitute unfair and deceptive acts or practices within the meaning of the ICFA because, as alleged herein, Defendant advertised and marketed the Overcharged Goods at Shelf Prices that were lower than the prices Defendant charged consumers (like Plaintiff and Class members) at checkout.

69.     Further, Defendant's actions offend an established public policy, and are immoral, unethical, oppressive, and unscrupulous, and are and were substantially injurious to consumers.

70.     By misleading Plaintiff and Class members into believing that they were purchasing merchandise for the prices represented on the Shelf Pricing, Defendant induced them to select such

goods based on their Shelf Pricing and then to purchase these Overcharged Goods at higher prices for the benefit of Defendant.

71.     Plaintiff and Class members relied on and were misled by Defendant's unfair and deceptive pricing practices to their detriment by purchasing the Overcharged Goods at prices higher than were advertised through the Shelf Pricing.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class members suffered actual damages in that they paid Defendant more for Overcharged Goods than the value represented in Defendant's Shelf Pricing.

73.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's false, misleading, unfair and deceptive pricing practices.

74.     Defendant knew and calculated that its practices would mislead consumers, continuing such practices despite knowledge of the deception and the harm it caused and causes. Such conduct thus is willful and in wanton disregard of Plaintiff's and Class members' rights.

75.     Plaintiff intends to continue shopping at Defendant's stores in the future and will likely be harmed by Defendant's false, misleading, unfair and deceptive pricing practices.

76.     Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's false, misleading, unfair, and deceptive pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

77.     Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's false, misleading, unfair, and deceptive

pricing practices apply to assorted merchandise at various times and reasonable consumers rely on

Shelf Pricing.

78.     As a result of the Defendant's violations of the ICFA, Plaintiff and Class members

are entitled to recover compensatory damages, restitution, punitive and special damages including

but not limited to treble damages, reasonable attorneys' fees and costs, injunctive relief, and other

relief as deemed appropriate or permitted pursuant to the relevant law.

79.     Plaintiff reserves the right to allege other violations of ICFA as discovery unfolds,

as Defendant's conduct is ongoing.

### COUNT II
### VIOLATION OF THE ILLINOIS
### UNIFORM DECEPTIVE TRADE PRACTICES ACT
#### (On Behalf of Plaintiff and the Illinois Class)

80.     Plaintiff re-alleges and incorporates by reference herein all of the allegations

contained in paragraphs 1-79 as if fully set forth herein.

81.     Plaintiff brings this action individually and on behalf of the Illinois Class.

82.     The Illinois Uniform Deceptive Trade Practices Act ("Ill. UDTPA"), 815 Ill. Comp.

Stat. 510/2, *et seq*., prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices, including but not limited to the use or employment of any deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such

material fact."

83.      815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive

trade practice when, in the course of his or her business, vocation, or occupation," the person does

any of the following: "(9) advertises goods or services with intent not to sell them as advertised; . . .

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or

21

amounts of price reductions; [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

84.     Defendant engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 510/2 when, as set forth above, it advertised Shelf Pricing with the intent not to sell such goods at the prices advertised; advertised Shelf Pricing with false or misleading purported price reductions; and continued these practices despite knowledge that they create a likelihood of confusion or misunderstanding.

85.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

86.     Defendant's deceptive acts proximately caused actual injury Plaintiff and the Class members at the point of purchase.

87.     Plaintiff and Class members would not have purchased the Overcharged Goods but for Defendant's false and misleading pricing practices and Shelf Pricing. Defendant intended Plaintiff and all Class members to rely on the false and misleading Shelf Pricing when purchasing the Overcharged Goods.

88.     Defendant knew that its unfair and deceptive pricing practices were causing Plaintiff and Class members to pay more for Overcharged Goods than the value represented in the Shelf Pricing, and its behavior thus was willful.

89.     Defendant's unfair and deceptive pricing practices are company-wide, pervasive, and continuous. Because Defendant continues to allow its stores across the United States to charge more for Overcharged Goods than what is advertised on the deceptive Shelf Pricing, and elects not to implement institutional systemic controls to prevent such practices even after being fined for

such practices by local agencies, Plaintiff and Class members are likely to be misled and overcharged in the future.

90.    Plaintiff intends to continue shopping at Defendant's stores in the future and will likely be harmed by Defendant's false, misleading, unfair and deceptive pricing practices.

91.    Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's false, misleading, unfair, and deceptive pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

92.    Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's false, misleading, unfair, and deceptive pricing practices apply to assorted merchandise at various times and reasonable consumers rely on Shelf Pricing.

93.    As a result of the Defendant's violations of the Ill. UDTPA, Plaintiff and Class members are entitled to injunctive relief, attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT III**
**VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and the Multi-State Consumer Class)**

94.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-93 as if fully set forth herein.

95.    Plaintiff and Class members have been injured as a result of Defendant's violations of the state consumer protection statutes listed above in paragraph 51 and footnote 13, which also

provide a basis for redress to Plaintiff and Class members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

96.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Class.

97.     Defendant violated the Multi-State Consumer Class's states' unfair and deceptive acts and practices laws by advertising sales prices for Overcharged Goods but charging Class members higher prices at checkout.

98.     Defendant's misrepresentations were material to Plaintiff's and Class members' decision to purchase the Overcharged Goods.

99.     Plaintiff intends to continue shopping at Defendant's stores in the future and will likely be harmed by Defendant's false, misleading, unfair and deceptive pricing practices.

100.    Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's false, misleading, unfair, and deceptive pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

101.    Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's false, misleading, unfair, and deceptive pricing practices apply to assorted merchandise at various times and reasonable consumers rely on Shelf Pricing.

102.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and /or with reckless disregard for the truth and for the rights of consumers.

24

103.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members paid higher prices for Overcharged Goods.

104.    As a result of Defendant's violations, Defendant has been unjustly enriched.

105.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT IV**
**VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(On Behalf of Plaintiff and the Multi-State Consumer Class)**

106.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-105 as if fully set forth herein.

107.    Plaintiff brings this action individually and on behalf of the Multi-State UDTPA Class.

108.    Plaintiff and Class members have been injured as a result of Defendant's violations of the UDTPA adopted by the states listed above in paragraph 52 and footnote 14.

109.    The UDTPA provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "advertises goods or services with intent not to sell them as advertised; "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" [or] "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

110.    Defendant engaged in unfair and deceptive acts in violation of the UDTPA when, as set forth above, it advertised Shelf Pricing with the intent not to sell such goods at the prices

advertised; advertised Shelf Pricing with false or misleading purported price reductions; and continued these practices despite knowledge that they create a likelihood of confusion or misunderstanding.

111.    Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

112.    Defendant's deceptive acts proximately caused actual injury Plaintiff and the Class members at the point of purchase.

113.    Plaintiff and Class members would not have purchased the Overcharged Goods but for Defendant's false and misleading pricing practices and Shelf Pricing. Defendant intended Plaintiff and all Class members to rely on the false and misleading Shelf Pricing when purchasing the Overcharged Goods.

114.    Defendant knew that its unfair and deceptive pricing practices were causing Plaintiff and Class members to pay more for Overcharged Goods than the value represented in the Shelf Pricing, and its behavior thus was willful.

115.    Defendant's unfair and deceptive pricing practices are company-wide, pervasive, and continuous. Because Defendant continues to allow its stores across the United States to charge more for Overcharged Goods than what is advertised on the deceptive Shelf Pricing, and elects not to implement institutional systemic controls to prevent such practices even after being fined for such practices by local agencies, Plaintiff and Class members are likely to be misled and overcharged in the future.

116.    Plaintiff intends to continue shopping at Defendant's stores in the future and will likely be harmed by Defendant's false, misleading, unfair and deceptive pricing practices.

117.    Plaintiff and Class members require injunctive relief because they will incur future overcharges caused by Defendant's false, misleading, unfair, and deceptive pricing practices because it is unreasonable for Plaintiff and Class members to expend the time and effort necessary to memorize or record the Shelf Pricing for every item they purchase, and compare those prices to the prices reflected on the receipts given to them after their purchases.

118.    Without injunctive relief, Plaintiff and Class members will continue to be overcharged without their knowledge because Defendant's false, misleading, unfair, and deceptive pricing practices apply to assorted merchandise at various times and reasonable consumers rely on Shelf Pricing.

119.    As a result of the Defendant's violations of the UDTPA, Plaintiff and Class members are entitled to injunctive relief, attorneys' fees and costs, and other relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class)**

120.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1-119 as if fully set forth herein.

121.    To the extent of any overlap of claims, Plaintiff's Unjust Enrichment cause of action herein is pled in the alternative to Counts I, II, III and IV above.

122.    Plaintiff brings this action individually and on behalf of the Nationwide Class.

123.    Plaintiff and Class members conferred a monetary benefit on Defendant by paying higher prices for Overcharged Goods than Defendant's advertised Shelf Pricing.

124.    Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted or retained that benefit. Through its false, misleading, unfair and deceptive pricing

practices, Defendant unjustly received and retained benefits at the expense of Plaintiff and Class members, specifically the difference in price between what was charged and what should have been charged, and the failure to provide the Overcharged Goods based on its representations.

125.    By and through Defendant's false, misleading, unfair and deceptive pricing practices, Defendant has received, had use of, and accrued interest on these funds wrongfully obtained from Plaintiff and Class members.

126.    Defendant should not be permitted to retain the money belonging to Plaintiff and Class members, because Defendant failed to provide the Overcharged Goods at the advertised price, and Defendant has not provided compensation to Plaintiff and Class members.

127.    Plaintiff and Class members have suffered pecuniary harm as a direct and proximate result of Defendant's conduct.

128.    If Plaintiff and Class members knew that Defendant was going to charge higher prices for Overcharged Goods, they would not have purchased Overcharged Goods from Defendant.

129.    Plaintiff and Class members have no adequate remedy at law.

130.    Plaintiff and Class members are entitled to restitution of, disgorgement of, and/or the imposition of a construct trust upon all profits, benefits, and other compensation obtained by Defendant, and for such other relief that this Court deems proper, as a result of their unfair, misleading, and inequitable conduct.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Classes, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.      Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel.

B.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful, unfair and deceptive business practices as set forth herein, and requiring it to implement systemic controls to prevent the same from continuing to occur;

C.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair and deceptive business practices;

D.      Awarding actual damages, compensatory damages, and punitive damages in an amount to be determined at trial;

E.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

F.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.      Ordering such other relief as may be just and proper.

## JURY DEMAND

131.      Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: October 17, 2024

Respectfully submitted,

**GINGOLD LEGAL**
/s/ Scott H. Gingold
SCOTT H. GINGOLD
1326 Isabella Street

Evanston, IL 60201
scott@gingoldlegal.com
Telephone: (773)793-9093

STANLEY D. BERNSTEIN
bernstein@bernlieb.com
SANDY A. LIEBHARD
liebhard@bernlieb.com
MICHAEL S. BIGIN*
bigin@bernlieb.com
STEPHANIE M. BEIGE
beige@bernlieb.com
JEFFREY MCEACHERN*
jmceachern@bernlieb.com
HAIRONG BASIL*
hbasil@bernlieb.com
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street
New York, New York 10016
Telephone: (212)779-1414
Facsimile: (212)779-3218

*Attorneys for Plaintiff*

*Application for *Pro Hac Vice* Forthcoming